IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| GETTY IMAGES, INC., a Delaware Corporation,<br><br>         Plaintiff,<br><br> vs.<br><br>ROXANNE MOTAMEDI, an individual,<br><br>         Defendant. | Case No. 2:16-cv-1892<br><br>COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF<br><br>JURY DEMAND |

Plaintiff Getty Images, Inc. ("GETTY IMAGES"), by and through its counsel of record, Sebris Busto James, files this Complaint for Damages and Injunctive Relief against Defendant, Roxanne Motamedi ("Motamedi"), an individual, alleging as follows:

### I.   PARTIES

1.1   GETTY IMAGES is a Delaware Corporation that serves as a holding company for affiliated entities that do business at locations in the United States, United Kingdom, and elsewhere.

1.2   Motamedi was formerly employed by GETTY IMAGES's affiliated and wholly-owned entity, Getty Images (US), Inc. as its Vice President, Global Entertainment & Partnerships. On information and belief, Motamedi resides in Los Angeles, California.

### II.   JURISDICTION AND VENUE

2.1   Jurisdiction is proper in this Court under 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 1

**SEBRIS BUSTO JAMES**
14205 S.E. 36th Street – Suite 325
Bellevue, Washington 98006
(425) 454-4233

2.2     Jurisdiction is proper in this Court under 28 U.S.C. § 1331, as GETTY IMAGES asserts claims arising under law of the United States.

2.3     Jurisdiction over GETTY IMAGES's state law claims is proper in this Court under 28 U.S.C. § 1367, because those claims are so related to GETTY IMAGES's federal claims that they form part of the same case or controversy.

2.4     Jurisdiction is proper in this Court pursuant to a Non-Disclosure Agreement between the parties in which they consent to the jurisdiction of this Court.

2.5     Venue is proper in this Court pursuant to a Non-Disclosure Agreement between the parties in which they consent to venue here.  Venue is also proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

### III.     FACTUAL ALLEGATIONS

3.1     Motamedi was formerly employed by Getty Images (US), Inc., as its Vice President, Global Entertainment & Partnerships.  In that capacity, she had significant overlap and interaction with GETTY IMAGES's affiliated entities.

3.2     Although she resided in Los Angeles, she had significant contact with GETTY IMAGES's Seattle affiliate.  For a period of time Motamedi's next-level supervisor was Nick Evans-Lombe, who at the time was based in the Seattle office, and a significant number of the employees that supported her and her global team worked out of the Seattle office.  All of the data and systems she used, as well as the trade secrets and confidential information she misappropriated, resided on the company's servers in Federal Way, Washington.  All of her compensation was processed by GETTY IMAGES's personnel in the Seattle office.

3.3.    Motamedi worked for GETTY IMAGES for more than 16 years before resigning in early November 2016.  In that time, she was pivotal in building GETTY IMAGES's editorial business.  For the last several years, Motamedi led the entertainment division of Editorial, an $80MM business, and oversaw a global team of approximately 100 employees.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 2

3.4     Motamedi's Non-Disclosure Agreement.  At the start of her employment, Motamedi signed a Non-Disclosure Agreement, which imposed strict restrictions on her use of GETTY IMAGES' Confidential Information.  During the course of her employment Motamedi was also subject to other policies and procedures that obligated her to protect the company's confidential information and trade secrets, and abide by its Code of Conduct and Code of Ethics. In reliance on Motamedi's promises, GETTY IMAGES provided her with access to its most confidential information, trade secrets, and client relationships.  She was only provided with this access because GETTY IMAGES trusted her to abide by the terms of the Non-Disclosure Agreement, as well as the company's policies, Code of Conduct, and Code of Ethics.  As a Vice President, Motamedi held a high-level position of trust and confidence.  GETTY IMAGES rightfully expected her to act as a fiduciary and act in the company's best interests at all times.

3.5     Over the course of the past sixteen years, GETTY IMAGES not only provided Motamedi with access to its trade secrets and confidential information, it paid her to use its goodwill and resources to develop relationships with contributors, partners, customers and business prospects, and to develop and lead its employees.  It did so expecting she would act in GETTY IMAGES's best interests at all times.

3.6     Silverhub Media UK Ltd./Nick Evans-Lombe.  Nick Evans-Lombe was formerly employed as GETTY IMAGES's COO.  He worked most recently out of GETTY IMAGES's London office.  During Motamedi's entire tenure at GETTY IMAGES, she and Evans-Lombe worked closely together.

3.7     Evans-Lombe left GETTY IMAGES effective April 8, 2013.  After resigning, he remained subject to noncompetition restrictions that prohibited him from competing against GETTY IMAGES or otherwise interfering with its business interests for a period of twelve months. In April of 2016, Evans-Lombe and other ex- GETTY IMAGES executives launched Silverhub Media Uk Ltd. ("Silverhub"), an entertainment photo agency based in the United Kingdom.

Silverhub competes directly with GETTY IMAGES's Editorial, and specifically, its Entertainment business.

3.8     <u>Motamedi's Breach of Contract, Fiduciary Duty, Misappropriation, and Unfair Competition</u>.  At the time Motamedi resigned, she stated that she planned to take time off to attend to family matters.  Her last day of employment with GETTY IMAGES was November 7, 2016.  However, on or about November 30, 2016, GETTY IMAGES learned that she was actively poaching its employees to work for Silverhub and was apparently working for or with Silverhub in some capacity, as an employee, owner, or both.

3.9     <u>Motamedi stole trade secrets and confidential information</u>.  Based on a preliminary review of Motamedi's email and accessible files, GETTY IMAGES discovered that during the last several weeks of her employment, Motamedi forwarded a large amount of GETTY IMAGES's trade secret and confidential information to her personal email account and to her husband's email account after directing her subordinates to provide her with such information.  Her GETTY IMAGES email file includes hundreds of emails that she forwarded to her personal email accounts (Roxanne.motomedi@gmail.com and [swissrox@gmail.com](swissrox@gmail.com)) and that of her husband/partner, Mitchell Lucas ([ml90049@gmail.com](ml90049@gmail.com)), during the weeks prior to her last day of her employment.  There was no legitimate reason for Motamedi to forward this trade secret and confidential information to her personal email accounts or husband's/partner's email account, especially given that she did so shortly before she resigned.  Examples of trade secret and confidential information she stole from GETTY IMAGES include an analysis of High Value Partners and contributors; a revenue report for all GETTY IMAGES's entertainment photographers; and dozens of the company's highly negotiated agreements with the company's key contributors, partners and customers.  Motamedi's actions violated her Non-Disclosure Agreement and company policies.  Motamedi's actions were intentional, and potentially caused and irreparable harm to GETTY IMAGES.

3.10   *Motamedi shared trade secret and confidential information*.  Prior to resigning, Motamedi forwarded to Evans-Lombe strategy regarding the company's editorial workflow; strategy regarding new market targets, new product areas and other key data; and compensation information for key GETTY IMAGES employees.  Motamedi also sent revenue information for GETTY IMAGES's third highest grossing contributor to an individual outside the company.  Motamedi sent GETTY IMAGES's trade secret and confidential information to a direct competitor, Silverhub, intending to cause significant harm to GETTY IMAGES.

3.11   *Motamedi conspired with Evans-Lombe to compete with GETTY IMAGES*.  Motamedi's emails reveal that she met with Evans-Lombe as early as June 2015, and on information and belief, began communicating at that time regarding the development of a business to compete with GETTY IMAGES.  By December 2015, she was sharing and forwarding confidential information to Evans-Lombe regarding GETTY IMAGES.  In March 2016, Motamedi shared GETTY IMAGES's business strategy with Evans-Lombe, and in April 2016, a few days prior to Silverhub's launch, she discussed with Evans-Lombe potential clients, partners and competitors to Silverhub.

3.12.   *Motamedi Interfered with GETTY IMAGES's business relationships*.  Motamedi's email file also includes evidence that she diverted business opportunities, interfered with GETTY IMAGES's contractual and business expectancies, and conspired with GETTY IMAGES's competitors.  The following are a few examples:

- In late September and early October 2016, Motamedi forwarded revenue information for one of GETTY IMAGES's highest grossing contributor photographers.  GETTY IMAGES's business relationship with that photographer is critical to the continued success of the company's entertainment business.  That photographer has since been directly contacted by Evans-Lombe/Silverhub with an offer to become a founding photographer with Motamedi's full knowledge that GETTY IMAGES must renegotiate its relationship with that photographer in March 2017.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 5

- Motamedi took steps to interfere with GETTY IMAGES's business relationship with a well-known singer's management team by forwarding the company's agreement with the artist to Motamedi's personal email address two weeks prior to leaving the company. She also introduced the artist's photographer, who also has a long-standing relationship with GETTY IMAGES, to a third party. By facilitating that introduction, Motamedi gave a competitor the ability to intervene in GETTY IMAGES's long standing relationships with the artist and her photographer. Further, she had the photographer charge GETTY IMAGES for the cost of travel to that meeting and approved the expenses.

- In Motamedi's final days, she diverted a significant company opportunity by delaying her team from closing a lucrative deal in the luxury brand space in Italy with one of the company's competitors. GETTY IMAGES was proposing to begin distributing the competitor's content, to be followed by GETTY IMAGES taking on the invoicing of the competitor's assignments and integration of their photographers in GETTY IMAGES's paid assignment work. The competitor wanted a quick start to the relationship; however, Motamedi instructed her team not to sign anything. This potential partner is now in negotiations with Silverhub.

3.13  <u>Motamedi solicited GETTY IMAGES's employees to work for Silverhub while employed by GETTY IMAGES</u>.  Prior to resigning, Motamedi facilitated an offer of employment from Silverhub to one of GETTY IMAGES's long-term, key employees.  In August 2016, Motamedi identified him to GETTY IMAGES's Senior Vice President of Sales for the Americas as a key employee worth retaining.  However, the following month, Motamedi worked with Evans-Lombe to facilitate an offer with higher compensation from Silverhub in order to recruit him away from GETTY IMAGES.  On information and belief, Motamedi has actively solicited, and continues to solicit, GETTY IMAGES's employees to grow Silverhub's business.

3.14.  <u>Irreparable Harm</u>.  Prior to her resignation, Motamedi leveraged relationships with GETTY IMAGES's contributors, partners, customers and employees to grow and develop

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 6

SEBRIS BUSTO JAMES
14205 S.E. 36th Street – Suite 325
Bellevue, Washington 98006
(425) 454-4233

Silverhub in collusion with Evans-Lombe. Motamedi's wrongful conduct as described in this action is causing irreparable harm to GETTY IMAGES's relationships with customers, photographers, suppliers, and employees. No amount of money can fully make up for the damage to relationships, which in some cases took many years to develop. Further, unless restrained, she and her co-conspirators will create further damage to GETTY IMAGES's relationships.

## IV.    FIRST CAUSE OF ACTION

### Breach of Contract

4.1    GETTY IMAGES realleges and incorporates by reference the foregoing paragraphs of the Complaint as though fully set forth herein.

4.2    As a condition of employment and being allowed access to GETTY IMAGES's Confidential Information, Motamedi entered into a Non-Disclosure Agreement with GETTY IMAGES whereby she agreed to hold GETTY IMAGES's Confidential Information in strict confidence, not to disclose such Confidential Information to third parties or to any person, and not to use any Confidential Information except for the Business Purpose specified in the Non-Disclosure Agreement.

4.3    The Non-Disclosure Agreement defines "Confidential Information" as "any information disclosed by GETTY IMAGES, including but not limited to, any financial information, procedures or processes employed and any other information, whether oral or visual communication, writing, digital transmission or any other means[.]"

4.4    Motamedi breached the Non-Disclosure Agreement by disclosing GETTY IMAGES's Confidential Information to unauthorized third parties, specifically co-conspirators Evans-Lombe, Silverhub, its employees and agents.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 7

4.5    GETTY IMAGES is entitled to immediate injunctive relief to enjoin Motamedi's breach of the Non-Disclosure Agreement, as well as any other rights or remedies at law or equity for such a breach.

## V.    SECOND CAUSE OF ACTION

**Violation of Economic Espionage Act, as Amended by Defend Trade Secrets Act**

5.1    GETTY IMAGES realleges and incorporates by reference the foregoing paragraphs of the Complaint as though fully set forth herein.

5.2    During her employment with GETTY IMAGES, Motamedi misappropriated GETTY IMAGES's trade secrets related to products and services used in and intended for use in interstate commerce.  Motamedi conspired with Evans-Lombe, Silverhub, its employees and agents to misappropriate those trade secrets and has received, possessed, and benefitted from them, knowing they were obtained without authorization.  The information that Motamedi misappropriated constitutes trade secrets protected by the Economic Espionage Act, as Amended by Defend Trade Secrets Act, 18 U.S.C. § 1831 et seq.

5.3    Motamedi's misappropriation of GETTY IMAGES's trade secrets was willful and malicious.  GETTY IMAGES is entitled to exemplary damages in an amount up to twice actual damages awarded.

5.4    As a direct consequence of Motamedi's misappropriation, GETTY IMAGES has suffered damages for actual loss in an amount to be proven at trial, including attorneys' fees and costs.

5.5    As a direct consequence of Motamedi's misappropriation, Motamedi and her co-conspirators have been unjustly enriched, and GETTY IMAGES is entitled to damages for such enrichment, in an amount to be proven at trial.

5.6     As a direct consequence of Motamedi's misappropriation, GETTY IMAGES is entitled to immediate injunctive relief and is entitled to seizure of the misappropriated information by the U.S. Marshals.

## VI.     THIRD CAUSE OF ACTION

### Misappropriation of Trade Secrets Under the UTSA

6.1     GETTY IMAGES realleges and incorporates by reference the foregoing paragraphs of the Complaint as though fully set forth herein.

6.2     During her employment with GETTY IMAGES, Motamedi misappropriated GETTY IMAGES's trade secrets, as defined in Washington's Uniform Trade Secrets Act ("UTSA"), RCW 19.108.010, et seq.. Motamedi conspired with Evans-Lombe, Silverhub, its employees and agents to misappropriate those trade secrets and has received, possessed, and benefitted from them, knowing they were obtained without authorization.

6.3     As a result of Motamedi's misappropriation of trade secrets, GETTY IMAGES has suffered damages in an amount to be proven at trial, including attorneys' fees and costs.

6.4     Motamedi's misappropriation of GETTY IMAGES's trade secrets was willful and malicious. GETTY IMAGES is entitled to exemplary damages in an amount up to twice actual damages awarded.

6.5     As a direct consequence of Motamedi's misappropriation, Motamedi and her co-conspirators have been unjustly enriched, and GETTY IMAGES is entitled to damages for such enrichment, in an amount to be proven at trial.

6.6     As a direct consequence of Motamedi's misappropriation, GETTY IMAGES is entitled to immediate injunctive relief with respect to the misappropriated information and/or royalty on future projects.

## VII.   FOURTH CAUSE OF ACTION

### Common Law Unfair Competition

7.1   GETTY IMAGES realleges and incorporates by reference the foregoing paragraphs of the Complaint as though fully set forth herein.

7.2   During the course of her employment, Motamedi had access to and utilized Motamedi's good will and resources to develop and acquire personal acquaintances and relationships with GETTY IMAGES's customers and prospects. Motamedi was compensated handsomely to develop such relationships for GETTY IMAGES's behalf.

7.3   Motamedi copied, forwarded, transferred and memorized GETTY IMAGES's confidential information. Unless enjoined, Motamedi intends to use the good will, confidential information, and relationships she was paid to develop to unfairly compete with Motamedi. Prior to resigning, and since resigning, Motamedi has undertaken a systematic solicitation of GETTY IMAGES's employees, customers, photographers and suppliers, attempting to induce them to leave GETTY IMAGES and transfer their relationships to Silverhub. Unless restrained, she will continue to engage in unfair competition.

7.4   As a direct consequence of Motamedi's unfair competition, GETTY IMAGES is entitled to immediate injunctive relief to enjoin Motamedi's unfair competition and to damages in an amount to be proven at trial.

## VIII.   FIFTH CAUSE OF ACTION

### Conversion and/or Trespass of Chattel

8.1   GETTY IMAGES realleges and incorporates by reference the foregoing paragraphs of the Complaint as though fully set forth herein.

8.2   Motamedi intentionally exercised dominion or control over or dispossessed, used, or intermeddled with GETTY IMAGES's chattel, including but not limited to, GETTY IMAGES's

customers and contact information, financial information including revenue, costs and profits, customer-specific pricing information, and other confidential and proprietary financial and customer information. Motamedi may also have converted and dispossessed, used, or intermeddled with other items that will be learned after commencement of litigation through the discovery process.

8.3   As a direct consequence of Motamedi's conversion, GETTY IMAGES has suffered damages in an amount to be proven at trial.

## IX.   SIXTH CAUSE OF ACTION
### Unjust Enrichment

9.1   GETTY IMAGES realleges and incorporates by reference the foregoing paragraphs of the Complaint as though fully set forth herein.

9.2   Motamedi has accepted, retained, and/or used the benefits received and taken from GETTY IMAGES under circumstances that make it inequitable for Motamedi to retain the benefits thereof.

9.3   Motamedi should be required to hold all proceeds of her wrongful conduct in trust for the benefit of GETTY IMAGES.

## X.   SEVENTH CAUSE OF ACTION
### Tortious Interference

10.1   GETTY IMAGES realleges and incorporates by reference the foregoing paragraphs of the Complaint as though fully set forth herein.

10.2   GETTY IMAGES had valid contractual relationships and/or business expectancies with its clients, photographers, prospects, vendors, suppliers, and employees.  GETTY IMAGES has long-term client relationships that have been maintained and developed over a substantial

period of time. GETTY IMAGES had financially supported Motamedi to develop and maintain such relationships on its behalf.

10.3 Motamedi knew of GETTY IMAGES's contractual relationships and/or business expectancies with its clients, photographers, prospects, vendors, suppliers, and employees.

10.4 Motamedi intentionally interfered with GETTY IMAGES's contractual relationships and/or business expectancies with their clients, prospects, vendors, suppliers, and employees. These acts were undertaken through improper means, including misappropriation and use of GETTY IMAGES's trade secrets and other confidential information, diversion of business opportunities, raiding of employees, spreading of false information, all for the improper purpose of harming GETTY IMAGES and thereby benefitting Motamedi and her co-conspirators.

10.5 As a direct consequence of Motamedi's tortious interference, GETTY IMAGES has suffered damages in an amount to be proven at trial.

## XI.   EIGHTH CAUSE OF ACTION
### Breach of Fiduciary Duty and Duty of Loyalty

11.1 GETTY IMAGES realleges and incorporates by reference the foregoing paragraphs of the Complaint as though fully set forth herein.

11.2 During her employment with GETTY IMAGES, Motamedi owed fiduciary duties to GETTY IMAGES. Motamedi owed a common law duty of loyalty, good faith, and fair dealing to GETTY IMAGES.

11.3 During her employment with GETTY IMAGES, Motamedi breached these duties by using, sharing, downloading, forwarding, emailing to herself and to her co-conspirator Evans-Lombe GETTY IMAGES's trade secrets and other confidential information, in order to further her own interests and those of her co-conspirators, in direct conflict with GETTY IMAGES's interests.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 12

**SEBRIS BUSTO JAMES**
14205 S.E. 36th Street – Suite 325
Bellevue, Washington 98006
(425) 454-4233

11.4   During her employment with GETTY IMAGES, Motamedi further breached these duties by delaying entering into contracts with GETTY IMAGES's clients or photographers on its behalf, in order to keep such opportunities for herself or to divert such opportunities to Silverhub.

11.5   During her employment with GETTY IMAGES, Motamedi further breached these duties by recruiting and raiding GETTY IMAGES's employees, inducing them to join Silverhub.

11.6   As a direct consequence of these breaches, GETTY IMAGES has suffered damages in an amount to be proven at trial.

## XII.   NINTH CAUSE OF ACTION
### Civil Conspiracy

12.1   GETTY IMAGES realleges and incorporates by reference the foregoing paragraphs of the Complaint as though fully set forth herein.

12.2   Motamedi combined or conspired with Evans-Lombe, Silverhub, its employees and agents to accomplish an unlawful purpose by unlawful means, including to misappropriate GETTY IMAGES's trade secrets and other confidential information, to use that information for the benefit of Motamedi and her co-conspirators to the detriment of GETTY IMAGES, to breach Motamedi's fiduciary and other duties to GETTY IMAGES, and to tortiously interfere with GETTY IMAGES's contract and/or business expectancies.

12.3   As a direct consequence of Motamedi's conspiracy, GETTY IMAGES has suffered damages in an amount to be proven at trial.

## XIII.   TENTH CAUSE OF ACTION
### Accounting

13.1   GETTY IMAGES realleges and incorporates by reference the foregoing paragraphs of the Complaint as though fully set forth herein.

13.2     Based on the foregoing allegations, GETTY IMAGES is entitled to an accounting by Motamedi.

## XIV.     REQUEST FOR RELIEF

Having alleged this Complaint against Motamedi, GETTY IMAGES prays that the Court award the following relief:

1.      Temporary and permanent orders requiring Motamedi to return to GETTY IMAGES all documents, data, and other property of GETTY IMAGES, including any computer, cell phone or external storage device used to copy, upload, or download information from GETTY IMAGES's computers and storage devices, and to allow GETTY IMAGES's expert(s) to forensically examine all devices and storage means within Motamedi's possession and her co-conspirator's possession, custody or control to confirm the return and deletion of all of GETTY IMAGES's trade secrets and confidential information;

2.      Temporary and permanent orders requiring Motamedi to preserve and protect all documents, files, and electronically stored information taken from GETTY IMAGES; all tangible or electronic communications with Evans-Lombe, Silverhub, or any of their employees or agents, and all tangible or electronic communications with any of GETTY IMAGES's clients, prospects, vendors, suppliers, and employees;

3.      Temporary and permanent orders requiring Motamedi to deliver a copy of the Court's Order Granting GETTY IMAGES's Motion for TRO to Evans-Lombe, Silverhub and its employees, including but not limited to, its IT personnel, and to request that they protect and preserve all emails and other files sent by her or sent to her;

4.      Temporary and permanent orders requiring Motamedi to deliver a copy of the Court's Order Granting GETTY IMAGES's Motion for TRO to all Internet Service Providers she has used to send or receive email, or through whom she has a cloud-based storage accounts,

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 14

including, but not limited to, Google, and to request that they protect and preserve all emails and other files sent, received, or stored by her;

5. Temporary and permanent orders restraining and enjoining Motamedi and her co-conspirators from soliciting GETTY IMAGES's customers, potential customers, vendors, suppliers, and current and former employees, to the extent such solicitation is enabled by or based on misappropriation of GETTY IMAGES's trade secrets and other confidential information, or would otherwise interfere with GETTY IMAGES's contractual or business expectancies;

6. Temporary and permanent orders restraining and enjoining Motamedi and her co-conspirators from otherwise possessing, using or disclosing GETTY IMAGES's trade secrets and other confidential information misappropriated by Motamedi;

7. Temporary and permanent orders restraining and enjoining Motamedi from performing any work for Silverhub;

8. An accounting from Motamedi;

9. Judgment against Motamedi for damages in an amount to be proven at trial;

10. Judgment against Motamedi in the amount of her unjust enrichment as a result of her trespass of chattel, misappropriation, and use of GETTY IMAGES's trade secrets and other proprietary information;

11. Judgment against Motamedi for double damages for her willful and malicious misappropriation of GETTY IMAGES's trade secrets pursuant to 18 U.S.C. § 1836 and the Uniform Trade Secrets Act, RCW 19.108.030;

12. Judgment against Motamedi in the amount of GETTY IMAGES's reasonable attorney's fees and costs as authorized by 18 U.S.C. § 1836, RCW 19.86, and RCW 19.108.030, or otherwise;

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 15

13. An Order permitting expedited discovery;

14. A Letter of Request for International Judicial Assistance Pursuant to The Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil and Commercial matters;

15. Permission to freely amend this Complaint to add claims and parties as necessary; and

16. Such other and further relief as this Court deems just and equitable.

DATED this 11th day of December, 2016.

SEBRIS BUSTO JAMES

/s/ Jeff James
/s/ Tina Aiken
Jeffrey A. James, WSBA #18277
Tina Aiken, WSBA #27792
14205 S.E. 36th Street, Suite 325
Bellevue, Washington 98006
Emails: jaj@sebrisbusto.com
taiken@sebrisbusto.com
Tel: 425-454-4233 / Fax:  425-453-9005
Attorneys for Plaintiff

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 16