1
2
3
4
5
6
7

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

8
9
10
11
12
13
14
15
16

GETTY IMAGES, INC., a Delaware
Corporation,

      Plaintiff,

vs.

ROXANNE MOTAMEDI, an individual,

      Defendant.

Case No. 2:16-cv-1892

PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER,
ORDER TO SHOW CAUSE, ORDER
EXPEDITING DISCOVERY, AND
LETTER OF REQUEST

CLERK'S ACTION REQUIRED

NOTE ON MOTION CALENDAR:

December 12, 2016 at 9:00 AM

17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S MOTION FOR TRO, ORDER TO SHOW CAUSE, ORDER
EXPEDITING DISCOVERY, AND LETTER OF REQUEST  -
2:16-cv-1892

## TABLE OF CONTENTS

I.  INTRODUCTION AND RELIEF REQUESTED ...................................................1

II. STATEMENT OF FACTS ..........................................................................2

    A.  Parties ............................................................................................2

    B.  Motamedi's Non-Disclosure Agreement  ....................................................3

    C.  Silverhub Media UK Ltd./Nick Evans-Lombe  ...........................................4

    D.  Motamedi's Breach of Contract, Fiduciary Duty, Misappropriation, and Unfair Competition ......................................................................................4

    E.  Motamedi shared trade secret and confidential information  ......................................5

    F.  Motamedi conspired with Evans-Lombe to compete with GETTY IMAGES ..........6

    G.  Motamedi interfered with GETTY IMAGES's business relationships  ...................6

    H.  Motamedi solicited GETTY IMAGES's employees to work for Silverhub while employed by GETTY IMAGES  ................................................................7

    I.  Irreparable Harm ................................................................................8

III.  AUTHORITY ...................................................................................8

  A.  GETTY IMAGES is Entitled to a TRO and Preliminary Injunction  ..............................8

    1.  GETTY IMAGES is likely to succeed on its claims.........................................9

      a.  Motamedi Breached the Non-Disclosure Agreement ...............................9

      b.  Motamedi misappropriated GETTY IMAGES's trade secrets..........................10

      c.  Motamedi breached her fiduciary duty and duty of loyalty. ......................13

    2.  GETTY IMAGES will suffer irreparable harm absent injunctive relief ..................14

    3.  The balance of equities favors GETTY IMAGES ........................................15

    4.  An injunction is in the public interest ..................................................16

  B.  The Court Should Grant Expedited Discovery .............................................16

  C.  The Court Should Issue a Letter of Request ...............................................19

IV.  CONCLUSION......................................................................................19

i

1

## TABLE OF AUTHORITIES

2

**CASES:**

3

*Boeing Co. v. Sierracin Corp.*, 108 Wn.2d 38, 50 (1987) ............................................................ 11

4

*Ed Nowogroski Ins., Inc. v. Rucker*, 137 Wn.2d 427, 449 (1999) .............................................. 11

5

*Ellsworth Assoc., Inc. v. United States,* 917 F. Supp. 841, 844 (D.D.C. 1996)........................... 17

6

*Kieburtz & Assocs. v. Rehn*, 68 Wn. App. 260, 265-66 (1992) .................................................. 14

7

*Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970 (9th Cir. 1991)................................... 16

8

*Lodis v. Corbis Holdings, Inc.,* 172 Wn. App. 835, 860 (2013) .................................................. 13

9

*MAI Systems Corp. v Peak Computer, Inc.*, 991 F.2d 511, 521 (9th Cir. 1992)......................... 11

10

*Moon v. Phipps*, 67 Wn.2d 948, 954-55 (1966)........................................................................... 14

11

*Pod-Ners, LLC v. Northern Feed & Bean of Lucerne Ltd. Liability Co.*, 204 F.R.D. 675, 676

    (D. Colo. 2002) ............................................................................................................................ 17

12

*Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276 (N.D. Cal 2002).............. 17

13

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).................. 9

14

*State ex rel. Pay Less Drug Stores v. Sutton*, 2 Wn.2d 523, 531 (1940)........................................ 9

15

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001)............ 9

16

*United States v. Nosal*, 828 F.3d 865, 882 (9th Cir. 2016).......................................................... 11

17

*Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008)........................................... 9

18

**STATUTES:**

19

18 U.S.C. § 1831 et seq.................................................................................................................. 13

20

18 U.S.C. § 1832 .......................................................................................................................... 16

21

18 U.S.C. § 1836(b) ..................................................................................................................... 13

22

18 U.S.C. § 1839(3) ..................................................................................................................... 13

23

18 U.S.C. §1836(b)(3) .................................................................................................................. 13

24

RCW 19.108.020 .......................................................................................................................... 13

25

RCW 19.108.020(1)...................................................................................................................... 10

26

RCW 19.108.010 (4) .................................................................................................................... 11

27

RCW 19.108.010(2)...................................................................................................................... 11

28

Washington's Uniform Trade Secrets Act ("UTSA"), RCW 19.108, et seq.,.............................. 10

I.   INTRODUCTION AND RELIEF REQUESTED

This is a case of economic espionage and duplicity.  For over a year prior to tendering her resignation, Defendant Roxanne Motamedi ("Motamedi") was conspiring with her former supervisors to set up a competing entity in the United Kingdom ("UK").  During this time period, she not only funneled trade secrets and highly confidential information to her future employer, but also diverted business opportunities worth millions of dollars and hired away employees. While these acts are heinous on their own, the fact that Motamedi was a Vice President who owed her employer a fiduciary duty makes her conduct all the more egregious.

Motamedi's naiveté – or arrogance – is her undoing.  She left a clear trail of emails behind that exposed her activities.  Undoubtedly, there is a treasure trove of additional emails on her personal devices and email and cloud-based storage accounts, and on those of her co-conspirator's devices and accounts, that will reveal the full extent of her duplicity.

Plaintiff Getty Images, Inc. ("GETTY IMAGES") brings this motion seeking injunctive relief, to immediately stop Motamedi and her co-conspirators from using GETTY IMAGES's trade secrets and confidential information and to stop them from continuing to engage in unfair competition and interference with GETTY IMAGES's contracts and business relations.  GETTY IMAGES also asks the Court to issue orders requiring Motamedi and her agents to preserve and not spoil tangible and electronic evidence, and to allow for expedited discovery prior to hearing GETTY IMAGES's motion for a preliminary injunction.  Finally, GETTY IMAGES asks that the Court issue a Letter of Request to permit GETTY IMAGES to seek the issuance of subpoenas in the UK against Motamedi's co-conspirators.

II.   STATEMENT OF FACTS

A.   Parties.

GETTY IMAGES is a Delaware Corporation that serves as a holding company for affiliated entities that do business at locations in the United States, United Kingdom, and elsewhere, including Getty Images (US), Inc.  Declaration of Craig Peters ("Peters Decl."), ¶ 2. Motamedi was formerly employed by Getty Images (US), Inc., as its Vice President, Global

1 | Entertainment & Partnerships.  *Id.*  In that capacity, she had significant overlap and interaction
2 | with GETTY IMAGES's affiliated entities.  *Id.*

3 |      Although she resided in Los Angeles, Motamedi had significant contact with GETTY
4 | IMAGES's Seattle affiliate.  *Id.*, ¶ 4.  For a period of time Motamedi's next-level supervisor was
5 | Nick Evans-Lombe, who at the time was based in the Seattle office, and a significant number of
6 | the employees that supported her and her global team worked out of the Seattle office.  *Id.*  All of
7 | the data and systems she used, as well as the trade secrets and confidential information she stole
8 | from GETTY IMAGES, resided on the company's servers in Federal Way, Washington.  *Id.*  All
9 | of her compensation was processed by GETTY IMAGES's personnel in the Seattle office.  *Id.*
10 | Motamedi signed a Non-Disclosure Agreement with GETTY IMAGES in February 2000
11 | through which she agreed that Washington law would apply, courts in the State of Washington
12 | would have jurisdiction and venue over disputes, and that injunctive relief would be an
13 | appropriate remedy for a threatened breach.  Declaration of Anne Hatcher ("Hatcher Decl."), Ex.
14 | 1.

15 |      Motamedi worked for GETTY IMAGES for more than 16 years before resigning in early
16 | November 2016.  Peters Decl., ¶ 5.  In that time, she was pivotal in building GETTY IMAGES's
17 | editorial business to the multi-million-dollar business it is today.  *Id.*  For the last several years,
18 | Motamedi led the entertainment division of Editorial, an $80MM business, and oversaw a global
19 | team of approximately 100 employees.  *Id.*

20 | **B.     Motamedi's Non-Disclosure Agreement.**

21 |    At the start of her employment, Motamedi signed a Non-Disclosure Agreement, which
22 | imposed strict restrictions on her use of GETTY IMAGES's Confidential Information.  *Id.*, ¶ 6;
23 | Hatcher Decl., Ex. 1.  During the course of her employment she was also subject to other policies
24 | and procedures that obligated her to protect the company's confidential information and trade
25 | secrets, and abide by its Code of Conduct and Code of Ethics, copies of which are also attached
26 | to the Declaration of Anne Hatcher (Hatcher Decl., Ex 3).  *Id.*  In reliance on Motamedi's
27 | promises, GETTY IMAGES provided her with access to its most confidential information, trade
28 |

PLAINTIFF'S MOTION FOR TRO, ORDER TO SHOW CAUSE, ORDER
EXPEDITING DISCOVERY, AND LETTER OF REQUEST - 2

SEBRIS BUSTO JAMES
14205 S.E. 36th Street – Suite 325
Bellevue, Washington 98006
(425) 454-4233

1    secrets, and client relationships.  She was only provided with this access because GETTY

2    IMAGES trusted her to abide by the terms of the Non-Disclosure Agreement, as well as the

3    company's policies, Code of Conduct and Code of Ethics.  *Id.*  As a Vice President, Motamedi

4    held a high-level position of trust and confidence.  GETTY IMAGES rightfully expected her to

5    act as a fiduciary and act in the company's best interests at all times.  *Id.*

6        Over the course of the past sixteen years, GETTY IMAGES not only provided Motamedi

7    with access to its trade secrets and confidential information, it paid her to use its goodwill and

8    resources to develop relationships with contributors, partners, customers and business prospects,

9    and to develop and lead its employees.  It did so expecting she would act in GETTY IMAGES's

10   best interests at all times.  *Id.*, ¶ 7.

11   **C.    Silverhub Media UK Ltd./Nick Evans-Lombe.**

12       Nick Evans-Lombe was formerly employed as GETTY IMAGES's COO.  *Id.*, ¶ 8.  He

13   worked most recently out of GETTY IMAGES's London office.  *Id.*  During Motamedi's entire

14   tenure at GETTY IMAGES, she and Evans-Lombe worked closely together.  *Id.*

15       Evans-Lombe left GETTY IMAGES on April 8, 2013.  *Id.*, ¶ 10.  After resigning, he

16   remained subject to noncompetition restrictions that prohibited him from competing against

17   GETTY IMAGES or otherwise interfering with its business interests for a period of twelve

18   months.  *Id.*  In April of 2016, Evans-Lombe and other ex- GETTY IMAGES executives

19   launched Silverhub Media Uk Ltd. ("Silverhub"), an entertainment photo agency based in the

20   United Kingdom.  *Id.*, Ex. 1 (news article announcing the formation of Silverhub).  Silverhub

21   competes directly with GETTY IMAGES's Editorial, and specifically, its Entertainment

22   business.  *Id.*

23   **D.    Motamedi's Breach of Contract, Fiduciary Duty, Misappropriation, and Unfair**

24   **        Competition.**

25       At the time Motamedi resigned, she informed GETTY IMAGES that she planned to take

26   time off to attend to family matters. Peters Decl., ¶ 10.  Her last day of employment with GETTY

27   IMAGES was November 7, 2016.  *Id.*  However, on or about November 30, 2016, GETTY

28

PLAINTIFF'S MOTION FOR TRO, ORDER TO SHOW CAUSE, ORDER
EXPEDITING DISCOVERY, AND LETTER OF REQUEST - 3

SEBRIS BUSTO JAMES
14205 S.E. 36th Street – Suite 325
Bellevue, Washington 98006
(425) 454-4233

IMAGES discovered that she was actively poaching employees of GETTY IMAGES to work for Silverhub and was apparently working for or with Silverhub in some capacity, as an employee, owner, or both. *Id.*

A litigation hold had been placed on Motamedi's email and files stored on GETTY IMAGES's servers due to an unrelated matter. *Id.*, ¶ 11. On reviewing some of those files, GETTY IMAGES discovered that during the last several weeks of her employment, Motamedi forwarded a large amount of GETTY IMAGES's trade secret and confidential information to her personal email account and to her husband's/partner's email account and had directed her subordinates to provide her with such information. *Id.* Her email file includes more than 300 emails that she forwarded to her personal email accounts (Roxanne.motamedi@gmail.com and swissrox@gmail.com) and that of her husband/partner, Mitchell Lucas (ml90049@gmail.com), during the last few months of her employment. *Id.* There was no legitimate reason for Motamedi to forward this trade secret and confidential information to her personal email accounts or husband's/partner's email account, especially given that she did so shortly before she resigned. *Id.* Examples of trade secret and confidential information she stole from GETTY IMAGES include an analysis of High Value Partners and contributors; a revenue report for all GETTY IMAGES's entertainment photographers; and dozens of the company's highly negotiated agreements with the company's key contributors, partners and customers. *Id.* A redacted sample of the trade secret and confidential information Motamedi forwarded to her personal email accounts is attached to Peters Decl. as Exhibit 2. *Id.*

If the information taken by Motamedi fell into the hands of a competitor, it would undermine the company's ability to compete on a level playing field, and the potential harm to GETTY IMAGES would be immeasurable and irreparable. *Id.*, ¶ 12. Her actions violated her Non-Disclosure Agreement, and as GETTY IMAGES now has information that Motamedi intends to work for Silverhub, it is clear that she intends to use GETTY IMAGES's trade secret and confidential information against it. *Id.*

SEBRIS BUSTO JAMES
14205 S.E. 36th Street – Suite 325
Bellevue, Washington 98006
(425) 454-4233

**E.**   **Motamedi shared trade secret and confidential information.**

Further review of Motamedi's email file revealed additional illegal actions by her.  *Id.*, ¶ 13.

During the last several months of her employment, she forwarded to Evans-Lombe strategy

regarding the company's editorial workflow; strategy regarding new market targets, new product

areas and other key data; and compensation information for key GETTY IMAGES employees.

*Id.*  Motamedi also sent revenue information for GETTY IMAGES's third highest grossing

contributor to an individual outside the company.  *Id.*  While GETTY IMAGES has only begun

to review Motamedi's emails and uncover her illegal actions, it is indisputable that she shared

GETTY IMAGES's trade secret and confidential information with a direct competitor Silverhub,

intending to cause significant harm to GETTY IMAGES.  *Id.*

**F.**   **Motamedi conspired with Evans-Lombe to compete with GETTY IMAGES.**

Although GETTY IMAGES has only begun to uncover the extent of Motamedi's

deception, her email file reveals that she met with Evans-Lombe as early as June 2015, and

apparently began communicating at that time regarding the development of a business to

compete with GETTY IMAGES.  *Id.,* ¶ 14.  Motamedi's email file contains evidence that by

December 2015, she was sharing and forwarding confidential information to Evans-Lombe

regarding GETTY IMAGES; in March 2016, Motamedi shared GETTY IMAGES's business

strategy with Evans-Lombe; and in April 2016, a few days prior to Silverhub's launch, she

discussed with Evans-Lombe potential clients, partners and competitors to Silverhub.  *Id.*,

Ex. 3-5.

**G.**   **Motamedi interfered with GETTY IMAGES's business relationships.**

Motamedi's email file also includes evidence that she diverted business opportunities,

interfered with the company's contractual and business expectancies and conspired with GETTY

IMAGES's competitors.  While we have already uncovered numerous instances and are

continuing to do so on a daily basis, the following are a few examples:

- In late September and early October 2016, Motamedi forwarded revenue information for

  one of GETTY IMAGES's highest grossing contributor photographers.  *Id.*, ¶ 15, Ex. 6.

PLAINTIFF'S MOTION FOR TRO, ORDER TO SHOW CAUSE, ORDER
EXPEDITING DISCOVERY, AND LETTER OF REQUEST - 5

**SEBRIS BUSTO JAMES**
14205 S.E. 36th Street – Suite 325
Bellevue, Washington 98006
(425) 454-4233

GETTY IMAGES's business relationship with that photographer is critical to the continued success of the company's entertainment business.  *Id.*  That photographer has since been directly contacted by Evans-Lombe/Silverhub with an offer to become a founding photographer with Motamedi's full knowledge that GETTY IMAGES must renegotiate its relationship with that photographer in March 2017.  *Id.*

- Motamedi took steps to interfere with GETTY IMAGES's business relationship with a well-known singer's management team by forwarding the company's agreement with the artist to her personal email address two weeks prior to leaving the company.  *Id.*, ¶ 15, Ex. 7.  She also introduced the artist's photographer, who also has a long-standing relationship with GETTY IMAGES, to a third party.  *Id.*  By facilitating that introduction, Motamedi gave a competitor the ability to intervene in GETTY IMAGES's long standing relationships with the artist and her photographer.  *Id.*  Further, she had the photographer charge GETTY IMAGES for the cost of travel to that meeting and approved the expenses.  *Id.*

- In Motamedi's final days, she diverted a significant company opportunity by delaying her team from closing a lucrative deal in the luxury brand space in Italy with one of the company's competitors.  *Id.*, ¶ 15, Ex. 8.  GETTY IMAGES was proposing to begin distributing the competitor's content, to be followed by GETTY IMAGES taking on the invoicing of the competitor's assignments and integration of their photographers in GETTY IMAGES's paid assignment work.  *Id.*  The competitor wanted a quick start to the relationship; however, Motamedi instructed her team not to sign anything.  We recently learned that this potential partner is now in negotiations with Silverhub.  *Id.*

## H.   Motamedi solicited GETTY IMAGES's employees to work for Silverhub while employed by GETTY IMAGES.

GETTY IMAGES recently learned that Motamedi has been attempting to lure GETTY IMAGES's key employees away to work for Silverhub and facilitated Silverhub's recruitment of a key employee.  *Id.*, ¶ 16.  Relationships are key in the entertainment industry and GETTY

SEBRIS BUSTO JAMES
14205 S.E. 36th Street – Suite 325
Bellevue, Washington 98006
(425) 454-4233

1   IMAGES's success is predicated on its employees' close relationships with contributors,

2   partners, and customers.  *Id.*  While GETTY IMAGES is receiving information daily regarding

3   Motamedi's poaching of GETTY IMAGES's employees, it is also uncovering evidence in her

4   email file of her activities ***while she was still employed***.  *Id.*

5         For example, Motamedi facilitated an offer of employment from Silverhub to one of

6   GETTY IMAGES's long-term, key employees, Josh Norton.  *Id.*, ¶ 17.  Norton has been

7   employed by GETTY IMAGES for more than 12 years and, as recently as August 2016,

8   Motamedi identified him to GETTY IMAGES's Senior Vice President of Sales for the Americas

9   as a key employee worth retaining.  *Id.*, ¶ 17, Ex. 9.  However, the following month, Motamedi

10   worked with Evans-Lombe to facilitate an offer with higher compensation from Silverhub to

11   Norton.  *Id.*, ¶ 17, Ex. 10.  Employee relationships like Norton's are built over time.  *Id.*  When a

12   key employee is poached by a trusted executive, the remaining employee relationships are

13   undermined.  *Id.*  Norton is but one example; on information and belief, Motamedi has actively

14   solicited and continues to solicit GETTY IMAGES's employees to grow Silverhub's business.

15   *Id.*

16   **I.**   **Irreparable Harm.**

17         Prior to her resignation, Motamedi leveraged relationships with GETTY IMAGES's

18   contributors, partners, customers and employees to grow and develop Silverhub in collusion with

19   Evans-Lombe.  *Id.*, ¶ 18.  Motamedi's wrongful conduct as described in this action is causing

20   irreparable harm to GETTY IMAGES's relationships with customers, photographers, suppliers,

21   and employees.  *Id.*  No amount of money can fully make up for the damage to relationships,

22   which in some cases took many years to develop.  *Id.*  Further, unless restrained, she and her co-

23   conspirators will create further damage to GETTY IMAGES's relationships.

24   **III.   AUTHORITY**

25   **A.   GETTY IMAGES is Entitled to a TRO and Preliminary Injunction**

26         GETTY IMAGES seeks a TRO requiring Motamedi to: (1) return all GETTY IMAGES

27   property and information, (2) provide access to her computer(s), portable storage devices, cell

28

**SEBRIS BUSTO JAMES**
14205 S.E. 36th Street – Suite 325
Bellevue, Washington 98006
(425) 454-4233

phone(s) and online accounts where GETTY IMAGES's information was transferred or is stored; and (3) solely for purposes of this litigation, retain all GETTY IMAGES information in the form it was transferred or stored.  In addition, Motamedi should be barred from sharing or using any GETTY IMAGES information for any purpose other than this litigation, including to develop strategy or solicit or service customers for Silverhub.  To maintain the status quo until GETTY IMAGES can determine through discovery all the trade secrets and confidential information Motamedi has misappropriated, and the scope of her use of that information to develop company strategy or contact, create bids for, or service GETTY IMAGES's clients or raid its employees, Motamedi should be barred from working on any matter for Silverhub involving individuals or entities who were employees, clients, photographers, or suppliers of GETTY IMAGES during Motamedi's employment, and barred from communicating with Evans-Lombe, Silverhub employees or agents about such individuals/entities.  Motamedi should be further ordered to direct her Internet Service Providers, her email providers, her cloud based storage accounts, her co-conspirators, and their agents to protect and preserve evidence stored on any device or cloud storage account related to the allegations in this matter.  Expedited discovery should be permitted so this matter then can be fully considered at a preliminary injunction hearing.

TROs and preliminary injunctions are devices for preserving the status quo and preventing irreparable loss before judgment.  *See, e.g., Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).  *See also State ex rel. Pay Less Drug Stores v. Sutton*, 2 Wn.2d 523, 531 (1940) (purpose of TRO is to preserve the status quo "until the propriety of granting a [preliminary] injunction can be determined").  The standards for granting TROs and preliminary injunctions are the same.  *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (analysis of preliminary injunction and temporary restraining order is "substantially identical").

To be entitled to a TRO or preliminary injunction, a party must show that:  (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest.  *Winter v.*

1   *Natural Resources Defense Council*, 555 U.S. 7, 20 (2008).   As discussed below, GETTY

2   IMAGES is entitled to a TRO and a preliminary injunction because it satisfies all elements

3   necessary for that relief.

4       **1.    GETTY IMAGES is likely to succeed on its claims**

5       In its Complaint, GETTY IMAGES has asserted a number of claims based on Motamedi's

6   unlawful actions.  This motion focuses on just a few of the claims that support injunctive relief.

7       **a.    <u>Motamedi Breached the Non-Disclosure Agreement</u>**

8       At the outset of her employment Motamedi entered into a Non-Disclosure Agreement with

9   GETTY IMAGES whereby she agreed to hold GETTY IMAGES's Confidential Information in

10   strict confidence, not to disclose such Confidential Information to third parties or to any person,

11   and not to use any Confidential Information except for the Business Purpose specified in the

12   Non-Disclosure Agreement.  Hatcher Decl., Ex. 1, ¶ 2.  The Non-Disclosure Agreement defines

13   "Confidential Information" as "any information disclosed by Getty Images, including but not

14   limited to, any financial information, procedures or processes employed and any other

15   information, whether oral or visual communication, writing, digital transmission or any other

16   means[.]" *Id.*,¶ 1.

17       The Non-Disclosure Agreement expressly applies "to all Confidential Information" and

18   "to Confidential Information of Getty Images' parent, subsidiary, and affiliated companies."  By

19   executing the Non-Disclosure Agreement, Motamedi "acknowledge[d] that all of Getty Images's

20   Confidential Information is owned solely by Getty Images (and/or its licensors) and that the

21   unauthorized disclosure or use of such Confidential Information would cause irreparable harm

22   and significant injury, the degree of which may be difficult to ascertain." *Id.*, ¶ 8.  Accordingly,

23   Motamedi agreed that "Getty Images shall have the right to obtain an immediate injunction for

24   any court of competent jurisdiction enjoining breach of this Agreement and/or disclosure of the

25   Confidential Information." *Id.*  Motamedi also agreed that the Non-Disclosure Agreement would

26   be "governed by the laws of the State of Washington" and consented to "the jurisdiction of an[d]

27   venue in the courts of the State of Washington." *Id.*, ¶ 12.

28

PLAINTIFF'S MOTION FOR TRO, ORDER TO SHOW CAUSE, ORDER
EXPEDITING DISCOVERY, AND LETTER OF REQUEST - 9

1    As shown by Mr. Peters' accompanying declaration and attachments thereto, Motamedi

2    has egregiously breached the Non-Disclosure Agreement, entitling GETTY IMAGES to

3    immediate injunctive relief.

4        b.    **Motamedi misappropriated GETTY IMAGES's trade secrets.**

5        GETTY IMAGES has asserted claims for misappropriation of trade secrets under both

6    Washington State and federal law.  Under Washington's Uniform Trade Secrets Act ("UTSA"),

7    RCW 19.108, et seq., "[a]ctual or threatened misappropriation may be enjoined."  RCW

8    19.108.020(1).  The term "trade secret" is defined under the UTSA as follows:

9        "Trade secret" means information, including a formula, pattern, compilation,
10       program, device, method, technique, or process that:

11       (a)    Derives independent economic value, actual or potential, from not being
                generally known to, and not being readily ascertainable by proper means
12              by, other persons who can obtain economic value from its disclosure or use;
                and

13       (b)    Is the subject of efforts that are reasonable under the circumstances to
14              maintain its secrecy.

15   RCW 19.108.010 (4).  The term "misappropriation" is defined in pertinent part as follows:

16       "Misappropriation" means:  . . .

17       (b)    Disclosure or use of a trade secret of another without express or implied
                consent by a person who: . . .

18              (ii)    At the time of disclosure or use, knew or had reason to know
19                      that his or her knowledge of the trade secret was . . . acquired under
                        circumstances giving rise to a duty to maintain its secrecy or limit
20                      its use . .

21   RCW 19.108.010(2).

22       Courts have found that customized compilations of data, which may come from both

23   public and private sources, constitute trade secrets.  *United States v. Nosal*, 828 F.3d 865, 882

24   (9th Cir. 2016) (database of potential executives compiled and used by search company); *MAI*

25   *Systems Corp. v Peak Computer, Inc.*, 991 F.2d 511, 521 (9th Cir. 1992) (manufacturer's

26   customer database that allows a competitor to direct its sales efforts to particular customers

27   qualifies as trade secret).  "A trade secrets plaintiff need not prove that every element of an

28

PLAINTIFF'S MOTION FOR TRO, ORDER TO SHOW CAUSE, ORDER
EXPEDITING DISCOVERY, AND LETTER OF REQUEST - 10

1   information compilation is unavailable elsewhere."  *Boeing Co. v. Sierracin Corp.*, 108 Wn.2d

2   38, 50 (1987).  Trade secret protection for a customer list does not depend on whether the list is

3   taken in written form or memorized.  *Ed Nowogroski Ins., Inc. v. Rucker*, 137 Wn.2d 427, 449

4   (1999).

5          There can be no doubt that GETTY IMAGES's detailed information about its current and

6   prospective clients, pending projects, finances, key employees, pricing, designs, and other

7   elements of its business constitute trade secrets under the UTSA.  *See* Peters Decl., ¶¶ 11-5

8   exhibits thereto.[1]  The information "derives independent economic value, actual or potential,

9   from not being generally known" to GETTY IMAGES's competitors such as Silverhub, who

10  could use such information to advance their own business while undermining GETTY IMAGES

11  in the market, *i.e.*, "obtain economic value from its disclosure or use."  *Id.*  The information is

12  *not* available to the public and is not readily ascertainable by proper means.  *Id.; see also* Hatcher

13  Decl., ¶4, Ex. 1-5.  Indeed, Motamedi's actions in copying and transferring that information for

14  months prior to her resignation, and then lying about her post-resignation intentions, confirms

15  that the information would be valuable to Motamedi and her co-conspirators.

16         GETTY IMAGES's trade secrets and confidential information have been "the subject of

17  efforts that are reasonable under the circumstances to maintain its secrecy."  GETTY IMAGES

18  required Motamedi to sign a Non-Disclosure Agreement before it would share *any* confidential

19  information with her about its business.  *Id.*, Ex. 1.  Thereafter, GETTY IMAGES provided

20  Motamedi with written policies that clearly spelled out what could *and could not* be done with

21  GETTY IMAGES's confidential information and trade secrets.  *Id.,* Ex. 2-4.  Lest there be any

22  doubt, GETTY IMAGES provided Motamedi with its Code of Conduct and Code of Ethics to

23  ensure she knew what was expected of her.  *Id.*  The trade secrets and confidential information

24  that she forwarded to her personal email address is available only through GETTY IMAGES's

25

26  _____

27  [1] GETTY IMAGES has submitted redacted versions of the referenced documents, pending the bringing of a Motion
    to Seal.  In case the Court has any doubt or questions as to the referenced documents, GETTY IMAGES can provide
    for an *in camera* inspection in the Court's chambers.

28

PLAINTIFF'S MOTION FOR TRO, ORDER TO SHOW CAUSE, ORDER
EXPEDITING DISCOVERY, AND LETTER OF REQUEST - 11

computer system, which requires a password for access, and access is limited to only a select group of employees.  The confidential nature of GETTY IMAGES's business information has thus been clear.  In removing confidential information in a surreptitious way, and concealing her post-employment intentions, Motamedi effectively acknowledged her understanding that the information was to be used only for legitimate company purposes, and that she was not entitled to possess it for any purpose other than to further GETTY IMAGES's business interests during the course of her employment.

Finally, based on the electronic trail she left behind, it is indisputable that Motamedi misappropriated the trade secrets in question.  Due to Motamedi's careful choreographing with her co-conspirators of their activities, GETTY IMAGES is unable to specify yet the full scope of the information unlawfully taken and used.  Even so, the evidence discovered to date establishes that Motamedi has violated the UTSA.

The same evidence supports the conclusion that Motamedi has violated the Economic Espionage Act, as amended by the Defend Trade Secrets Act, 18 U.S.C. § 1831 et seq. ("EEA").  As amended, the EEA authorizes private civil actions by owners of trade secrets that have been misappropriated, where the trade secret is related to a product or service used in, or intended for use in, interstate commerce.  18 U.S.C. § 1836(b).  The EEA defines trade secrets similarly to but even more broadly than the UTSA.  18 U.S.C. § 1839(3).  Under the EEA, the Court may grant an injunction to prevent actual or threatened misappropriation of trade secrets.  18 U.S.C. §1836(b)(3); RCW 19.108.020.  The evidence shows Motamedi has misappropriated from GETTY IMAGES trade secrets relating to products and services used in interstate commerce and shared them with and/or used them on behalf of her co-conspirators Evans-Lombe, Silverhub and its employees and agents.  GETTY IMAGES is entitled to injunctive relief as permitted by the UTSA and EEA.

        c.    **Motamedi breached her fiduciary duty and duty of loyalty.**

As a Vice President, Global Entertainment & Partnerships for Getty Images (US), Inc., Motamedi was responsible for managing an $80MM business and a team of approximately 100

1   employees.  There no doubt that Motamedi owed a fiduciary duty to GETTY IMAGES.

2   "Corporate officers owe fiduciary duties of good faith, care, and loyalty."  *Lodis v. Corbis*

3   *Holdings, Inc.,* 172 Wn. App. 835, 860 (2013).  "Officers must act in the best interests of the

4   corporation – 'a standard of behavior above that of the workaday world.'"  *Id.* (internal citation

5   omitted).  In fact, all employees owe their employer a duty of loyalty under Washington law.

6   This duty prohibits employees from acting in direct competition with their employer, for

7   example, by soliciting customers for a rival business.  *Kieburtz & Assocs. v. Rehn*, 68 Wn. App.

8   260, 265-66 (1992).  Similarly, as agents of their employer, employees have a duty to use the

9   employer's property solely for the employer's benefit.  *Moon v. Phipps*, 67 Wn.2d 948, 954-55

10  (1966).

11        The evidence demonstrates that while still employed by GETTY IMAGES, Motamedi

12  violated her fiduciary duty to the company in a number of ways:

13  - She funneled GETTY IMAGES's trade secrets and confidential information to her co-
14    conspirators, Evans-Lombe and Silverhub.  Peters Decl., ¶ 15.

15  - She diverted photographers and clients from GETTY IMAGES to further her own interests.
16    *Id.*
17

18  - She recruited GETTY IMAGES employees to quit their employment with GETTY
19    IMAGES and accept employment with Silverhub.  *Id.*

20  She engaged in these misdeeds while employed by GETTY IMAGES as an Executive Vice

21  President.  These actions indisputably violated her fiduciary duty to GETTY IMAGES and will

22  cause GETTY IMAGES irreparable harm unless Motamedi is immediately enjoined pursuant to

23  F.R.C.P. 65.

24        **2.      GETTY IMAGES will suffer irreparable harm absent injunctive relief**

25        For months prior to announcing she was leaving GETTY IMAGES's employment,

26  Motamedi accessed and transferred GETTY IMAGES's trade secrets and confidential information

27  to support Silverhub's and/or her own competing interests at GETTY IMAGES's expense.

28

SEBRIS BUSTO JAMES
14205 S.E. 36th Street – Suite 325
Bellevue, Washington 98006
(425) 454-4233

1   Motamedi went so far as to withhold lucrative business opportunities, and to recruit away GETTY

2   IMAGES employees, demonstrating her willingness to undermine GETTY IMAGES if it would

3   inure to her own benefit.  Peters Dec., ¶ 15, Ex. 8.

4          As long as Motamedi and her co-conspirators possess GETTY IMAGES's information, and

5   GETTY IMAGES remains uncertain of the scope of that information and how it is being used,

6   GETTY IMAGES is unable to take effective steps to protect itself.  Indeed, given the nature of the

7   information, the only way to limit the harm to GETTY IMAGES at this point may be a global

8   injunction against Motamedi and her co-conspirators.[2]  Given the highly competitive nature of

9   GETTY IMAGES's business, Motamedi's continued use of GETTY IMAGES's trade secrets and

10  confidential information will almost certainly erode GETTY IMAGES's client base, photographer

11  relationships, and lead to the loss of important employees.  Peters Decl., ¶ 18.  Monetary damages

12  for the loss of specific projects will be insufficient to repair the harm.  GETTY IMAGES has shown

13  that it is likely to suffer irreparable injury absent injunctive relief.  Indeed, if there was a price to be

14  paid for GETTY IMAGES's business, Silverhub could have attempted to purchase it from GETTY

15  IMAGES.  *See, e.g.*, *http://silverhub.media/en/pages/newsannouncement.html* (news article

16  announcing Silverhub's acquisition of Splash News and quoting Evans-Lombe, its co-founder: "The

17  acquisition of a respected brand like Splash News continues our strategy to reinvigorate the worlds

18  of celebrity, sports and entertainment content and invest for growth.")

19         **3.      The balance of equities favors GETTY IMAGES**

20         Granting the requested relief would not unfairly disadvantage Motamedi.  She can state

21  no good reason she should not have to return information she improperly took and shared, nor

22  can she state any reason why her co-conspirators should be allowed to use that information.  Any

23  harm they might suffer from returning the information carries no weight—they never should

24  have had the information in the first place.

25

26

27  [2] GETTY IMAGES is pursuing equitable and legal remedies against Motamedi's co-conspirators in the UK.
    Toward that end, it is requesting the Court issue a "Letter of Request" as discussed below.

28

PLAINTIFF'S MOTION FOR TRO, ORDER TO SHOW CAUSE, ORDER
EXPEDITING DISCOVERY, AND LETTER OF REQUEST - 14

1   Similarly, there is no unfair disadvantage in enjoining Motamedi from working on any

2   matter for Silverhub involving clients, photographers, or suppliers who had established contracts or

3   business relationships with GETTY IMAGES during Motamedi's employment.  Motamedi

4   misappropriated confidential information regarding the entities and individuals in question.  She

5   could not reasonably expect she could continue to work with the same clients and individuals on the

6   same projects she became aware of and diverted while employed by GETTY IMAGES, thereby

7   gaining an unfair and unlawful competitive advantage, which is why she kept her activities secret.

8   Enjoining Motamedi in this manner while this case is pending would only put Motamedi in the

9   position she would have been in had she not taken GETTY IMAGES's confidential information in

10   order to also take its customers.[3]  *See Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970 (9th

11   Cir. 1991) (affirming eight-month preliminary injunction barring Motamedi from producing or

12   selling products made with technology plaintiff alleged constituted its trade secret; injunction in

13   trade secret case "seeks to protect the secrecy of misappropriated information and to eliminate any

14   unfair head start the Motamedi may have gained").

15   GETTY IMAGES will suffer the far greater hardship if injunctive relief is not granted – the

16   loss of clients, photographers, and employees who were actively recruited by Motamedi in breach of

17   her fiduciary duty.  The equities favor granting a TRO pending expedited discovery, and, assuming

18   the evidence further supports GETTY IMAGES's claims, a preliminary injunction to remain in

19   place until a trial on the merits.

20   ### 4.        An injunction is in the public interest

21   The EEA establishes criminal penalties for misappropriation of trade secrets.  18 U.S.C. §

22   1832.  In doing so, the law demonstrates Congress's belief that such conduct is harmful not only

23   to the individual or entity whose secrets are purloined, but also to the public.  Theft of trade

24   secrets, and allowing the thieves to retain and use the confidential information they purloined,

25   undermines business development and stability; preventing such conduct is in the public's

[3] Any bond in this case should be nominal as a result.

PLAINTIFF'S MOTION FOR TRO, ORDER TO SHOW CAUSE, ORDER
EXPEDITING DISCOVERY, AND LETTER OF REQUEST - 15

1    interest.  That injunctive relief is generally appropriate when trade secrets have been

2    misappropriated is acknowledged by the inclusion of specific provisions for such relief in both

3    the EEA and the UTSA.

4    **B.    The Court Should Grant Expedited Discovery**

5          Motamedi engaged in improper conduct.  To determine the full extent of Motamedi's

6    unlawful actions and establish GETTY IMAGES's right to a preliminary injunction, GETTY

7    IMAGES needs to obtain certain basic discovery from Motamedi.  Generally, discovery does not

8    commence before the parties have conducted a Rule 26(f) meeting, which often takes place three

9    or four months into the litigation – after a Motamedi has retained counsel and responded to the

10   complaint.  The Court, however, may authorize discovery before the Rule 26(f) meeting for good

11   cause, which is shown where the moving party's need for expedited discovery outweighs the

12   prejudice to the non-moving party.  *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D.

13   273, 276 (N.D. Cal 2002).

14         In *Semitool,* the Court found good cause for permitting expedited discovery (three weeks

15   earlier than as authorized by Fed. R. Civ. P. 26(f) and shortening the response time from 30 to 20

16   days) where the requests were limited and relevant, and the discovery would allow the plaintiff

17   to determine whether amendment of its complaint was appropriate.  Courts have also found good

18   cause for expedited discovery in cases involving unfair competition, and where a preliminary

19   injunction is sought.  *See, e.g., Pod-Ners, LLC v. Northern Feed & Bean of Lucerne Ltd.*

20   *Liability Co.*, 204 F.R.D. 675, 676 (D. Colo. 2002); *Ellsworth Assoc., Inc. v. United States,* 917

21   F. Supp. 841, 844 (D.D.C. 1996).

22         Here, GETTY IMAGES seeks to conduct limited expedited discovery regarding the trade

23   secrets and confidential information taken and used by Motamedi, as that information is not only

24   necessary to support a preliminary injunction, but would also allow GETTY IMAGES to take

25   steps to protect its business before Motamedi causes it further damage.  Such discovery would

26   include, among other things:  the terms and conditions of Motamedi's relationship with

27   Silverhub; identification and production of all GETTY IMAGES information Motamedi copied,

28

PLAINTIFF'S MOTION FOR TRO, ORDER TO SHOW CAUSE, ORDER
EXPEDITING DISCOVERY, AND LETTER OF REQUEST - 16

downloaded, forwarded, or otherwise transferred from GETTY IMAGES; and information concerning GETTY IMAGES clients, photographers, employees, and suppliers that Motamedi and/or her agents have solicited contrary to GETTY IMAGES's interests.  GETTY IMAGES also requests that it be permitted to take Motamedi's deposition focused on the same issues, and that these deponents be ordered to appear at the offices of GETTY IMAGES's counsel.  Any such depositions should not be counted against the general limitations on the number of depositions in Fed. R. Civ. P. 30.

As a necessary adjunct to discovery, GETTY IMAGES requests that Motamedi also be ordered to immediately deliver to a neutral third-party expert all computers, flash drives, SD cards, cell phones, and other external drives used by her at any time since January 1, 2015[4] that are in her possession, custody, or control.  The third-party should be instructed to create a forensic image at Motamedi's expense of all such devices and to provide a written report of their contents (without disclosing any proprietary information), but should not allow either party to view the image(s) absent mutual written agreement of the parties or order of the Court. Motamedi should also be ordered to identify any and all cloud-based storage accounts she has accessed since January 1, 2015 and to provide login credentials (*e.g.,* user ID and password) for each such account.  Motamedi should also be ordered to notify all Internet Service Providers she has used to send or receive email, or through whom she has cloud-based storage accounts, including, but not limited to, Google, to request that they protect and preserve all emails and other files sent, received, or stored by her.  Finally, GETTY IMAGES requests that Motamedi also be ordered to respond to the written discovery requests attached as Exhibit 1 to the Declaration of Jeffrey A. James ("James Decl.").

Without such evidence, GETTY IMAGES is unable to fully establish the extent of Motamedi's wrongful conduct and the injury GETTY IMAGES is likely to suffer in the future. To permit the preliminary injunction hearing to be scheduled without excessive delay, GETTY

---

[4] Emails pulled from GETTY IMAGES's server show Motamedi was communicating with Evans-Lombe in June 2015.  Peters Decl., ¶ 14.

IMAGES requests that the computers and other storage devices be produced to the third-party expert immediately; answers to written discovery be served within 10 days, and that the depositions be ordered to take place in the next two weeks unless otherwise agreed to by GETTY IMAGES's counsel.

Motamedi will not be unfairly prejudiced by having to produce the requested discovery and submit to a brief deposition within the proposed timeframe. Motamedi is well aware of the information she has taken and the scope of her actions. The requested discovery does not require her to search large databases or formulate legal defenses; Motamedi must simply identify and produce documents and devices regarding her relationship with Evans-Lombe and Silverhub, the information she took from GETTY IMAGES, and the GETTY IMAGES clients, photographers, employees, and suppliers she has contacted in furtherance of her personal interests, and to answer brief questions under oath.

**C.     The Court Should Issue a Letter of Request**

Because Evans-Lombe and others believed to be acting on their behalf are located in the UK, GETTY IMAGES respectfully requests that the Court issue a Letter of Request for International Judicial Assistance Pursuant to The Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil and Commercial matters ("Letter of Request"). *See* James Decl., ¶ 3. The Letter of Request is a precursor to applying to the English court to issue an order compelling the non-party witnesses, *e.g.,* Evans-Lombe and others at Silverhub, to attend a deposition in England and produce documents in advance of that deposition. This discovery is needed to uncover the extent of the conspiracy and further support a preliminary injunction. If the Court grants this request, GETTY IMAGES can secure an appropriate form from its UK counsel to provide to the Court.

**IV.     CONCLUSION**

Motamedi has acted to cause irreparable harm to GETTY IMAGES. Her use of GETTY IMAGES's misappropriated trade secrets and confidential information must be restrained. Given the evidence of her misconduct and tortious interference uncovered to date, Motamedi should be

PLAINTIFF'S MOTION FOR TRO, ORDER TO SHOW CAUSE, ORDER
EXPEDITING DISCOVERY, AND LETTER OF REQUEST - 18

SEBRIS BUSTO JAMES
14205 S.E. 36th Street – Suite 325
Bellevue, Washington 98006
(425) 454-4233

1    ordered to provide expedited discovery prior to the preliminary injunction hearing.  She should

2    also be ordered to preserve evidence, and to direct others within her sphere of influence to do so

3    as well, so that this matter can be fully and fairly resolved at trial.

4                                        SEBRIS BUSTO JAMES

5                                        /s/ Jeff James
                                         Jeffrey A. James, WSBA #18277
6                                        /s/ Tina Aiken
                                         Tina Aiken, WSBA #27792
7                                        14205 S.E. 36th Street, Suite 325
                                         Bellevue, Washington 98006
8                                        Emails: jaj@sebrisbusto.com
                                         taiken@sebrisbusto.com
9                                        Tel: 425-454-4233 / Fax:  425-453-9005
                                         Attorneys for Plaintiff
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION FOR TRO, ORDER TO SHOW CAUSE, ORDER          SEBRIS BUSTO JAMES
EXPEDITING DISCOVERY, AND LETTER OF REQUEST - 19             14205 S.E. 36th Street – Suite 325
                                                               Bellevue, Washington 98006
                                                                    (425) 454-4233