The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| GETTY IMAGES, INC., a Delaware Corporation,<br><br>    Plaintiff,<br><br> vs.<br><br>ROXANNE MOTAMEDI, an individual,<br><br>    Defendant. | Case No. 2:16-cv-1892<br><br>SECOND DECLARATION OF CRAIG PETERS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |

1. <u>Introduction</u>.  I am over 18 years of age, am competent to testify, and have personal knowledge of the facts set forth herein.

2. <u>Background</u>.  I remain in the same role as described in my first Declaration filed in this action.

4. Since my first Declaration, I have had an opportunity to review our own records in greater depth, as well as the production from Ms. Motamedi in this action, and have learned that her deception went far beyond what I had previously surmised.

5. <u>SilverHub Media UK Ltd./Nick Evans-Lombe</u>.  SilverHub is also partnered with Shutterstock which competes with GETTY IMAGES across all business lines and in all geographies.  It is also clear that Ms. Motamedi, SilverHub and Shutterstock have been in discussions regarding various opportunities to partner together in competition with GETTY IMAGES since as early as June 2015.  Documents produced by Ms. Motamedi in the last few days include phone records and emails that show that she and her husband have been

DECLARATION OF CRAIG PETERS - 1

SEBRIS BUSTO JAMES
14205 S.E. 36th Street, Suite 325
Bellevue, Washington  98006
Tel: (425) 454-4233 – Fax:(425) 453-9005

communicating with the Ben Pfeiffer, the Senior Vice President of Business Development for Shutterstock, since at least June 2015, and that Ms. Motamedi, Mr. Pfeiffer and Mr. Evans-Lombe were communicating in December 2016.  *See* Declaration of Tina M. Aiken ("Aiken Dec."), Exs. 1, 2.   However, as most of the emails communications with Mr. Pfeiffer are blank, additional discovery is needed to determine the extent of Ms. Motamedi's disclosure of confidential and trade secret information.

6. Indeed, <u>Motamedi conspired with Evans-Lombe to compete with GETTY IMAGES</u>.  Ms. Motamedi, working at times with her husband, Mitchell Lucas, began discussions about potential partnering opportunities as early as March 2015 (Ex. 1 MOTAMEDI-0080764, 0080792), and evolved into detailed discussions with Mr. Evans-Lombe in January of 2016 to explore setting up a competitive business to GETTY IMAGES.  (Ex. 1 MOTAMEDI-0080764, 0080792, 0083395, 0083442, 0083511, 0083517, 0083552).

On January 14, 2016, Mr. Evans-Lombe wrote to Ms. Motamedi, via her husband's email address, "I hope that we can find a way to make something work that will be fun for us all as well as rewarding.   We really see an opportunity to put together a group of people who really know the industry, know what they are doing and build a company that can thrive in the market as it is now and as it will continue to evolve...I think we can use the advantages of access, quality imagery and connections to succeed even as the routes to market get more complicated." (Ex. 1 MOTAMEDI-0083395).  Ms. Motamedi responded, "I am interested in working side by side with you as a partner and would like to explore this further…"  This exchange kicked-off months of back-and-forth between Ms. Motamedi and Mr. Evans-Lombe, including key confidential details about GETTY IMAGES that Ms. Motamedi shared in service of setting up a competitive business.   I have learned that Ms. Motamedi has been, over the last several months and while still employed by Getty Images, actively poaching employees, customers and photographers in support of this competing venture.

7. <u>Violations of Motamedi's Non-Disclosure Agreement</u>.  At the start of her employment, Ms. Motamedi signed a Non-Disclosure Agreement, which imposed strict restrictions on her use of GETTY IMAGES' Confidential Information.  A copy of that

DECLARATION OF CRAIG PETERS - 2

Agreement is attached to the Declaration of Anne Hatcher (*See* Declaration of Anne Hatcher, Dkt. 8, Ex. 1).  Based on my review of documents produced by Ms. Motamedi in this action, it is clear that Ms. Motamedi violated the terms of her Non-Disclosure Agreement by sharing GETTY IMAGES' Confidential Information with her husband, Mitchell Lucas, and Mr. Evans-Lombe of SilverHub, at a minimum.

On June 9, 2016, I wrote and disseminated a highly detailed and confidential, "State of the Business," summary to the senior business leaders of GETTY IMAGES, including Ms. Motamedi.  The summary highlighted progress and challenges in strategic initiatives, content partnerships, marketing initiatives, customers and corporate transactions, as well as very detailed information regarding this privately-held Company's financial position.  (Ex. 1 MOTAMEDI-0083800).  Given the highly sensitive nature of the information detailed in this summary, I included an express "reminder of the confidential treatment of this information" at the beginning of the note.  I have learned that Ms. Motamedi forwarded this highly confidential communication to Mr. Evans-Lombe almost immediately upon receiving it.  On June 10, 2016 at 1:23 AM, she forwarded my note to nevanslombe@gmail.com with the following note: "Probably very naughty to send you this but please do not forward."  (Ex. 1 MOTAMEDI-0083800).   For anyone trying to understand the challenges and opportunities for GETTY IMAGES' business, this detailed note provided a clear road map and articulation of GETTY IMAGES current positioning in the imagery market and would be invaluable to a competitor or potential competitor of GETTY IMAGES.  This sharing of information with Mr. Evans-Lombe was a clear violation of Ms. Motamedi's Non-Disclosure Agreement, particularly in light of my express direction to treat the information confidentially, and constituted conduct that Ms. Motamedi clearly understood was wrong.

In addition to Ms. Motamedi's sharing of the highly confidential State of the Business report, Ms. Motamedi shared a detailed summary of proceedings from a GETTY IMAGES content summit, which articulated the key competitive dynamics, strategies and challenges in sourcing of content, which is the lifeblood of GETTY IMAGES business.  (Ex. 1 MOTAMEDI-

DECLARATION OF CRAIG PETERS - 3

1  0084880).  This information would be invaluable to any competitor targeting key providers of
2  content to Getty Images as well as helping a competitor undermine GETTY IMAGES' progress
3  in sourcing content.   I sent this message to members of our content team on September 25, 2016,
4  including Ms. Motamedi.  Ms. Motamedi, in turn, forwarded the contents of my email to her
5  husband's email address, ml90049@gmail.com on September 25, 2016 at 12:52 PM PDT.  This
6  email was then forwarded with the note, "Super confidential. Read below," from this email
7  address to Mr. Evans-Lombe on September 25, 2016 at 9:39 PM PDT.  While noting the
8  confidentiality of my message, Ms. Motamedi forwarded the note directly to Mr. Evans-Lombe,
9  in direct contravention of her Non-Disclosure Agreement.
10       As noted in my first Declaration, Ms. Motamedi was also subject to other policies and
11  procedures that obligated her to protect the company's confidential information and trade secrets,
12  and abide by its Code of Conduct and Code of Ethics (Declaration of Craig Peters dated
13  December 12, 2016, Dkt. 5 ("Peters 1st Decl.").  In reliance on Ms. Motamedi's promises,
14  GETTY IMAGES provided her with access to its most confidential information, trade secrets,
15  and client relationships, including the highly confidential communications noted above.  She was
16  only provided with this access because GETTY IMAGES trusted her to abide by the terms of the
17  Non-Disclosure Agreement, as well as the company's policies, Code of Conduct and Code of
18  Ethics.  As a Vice President, Ms. Motamedi held a high-level position of trust and confidence.  It
19  is clear from these examples that Ms. Motamedi flagrantly disregarded her obligations of
20  confidentiality, trust and ethics, which governed her employment with GETTY IMAGES.
21       A significant amount of GETTY IMAGES' confidential information has been provided
22  by Ms. Motamedi to SilverHub, our competitor. This information will undermine GETTY
23  IMAGES' ability to compete on a level playing field, and the potential harm to us has been and
24  would be immeasurable and irreparable.  Her actions violated her Non-Disclosure Agreement,
25  and as we now have information that Ms. Motamedi is actively working for SilverHub, it is clear
26  that she intends to use GETTY IMAGES's trade secret and confidential information against us.
27  (See Aiken Dec., Exs. 7, 8 DEFENDANT'S Responses to Interrogatories 2 and 7.)

DECLARATION OF CRAIG PETERS - 4

SEBRIS BUSTO JAMES
14205 S.E. 36th Street, Suite 325
Bellevue, Washington  98006
Tel: (425) 454-4233 – Fax:(425) 453-9005

8. <u>Misappropriation of Company Resources for the Benefit of a Competitor</u>.  Over the course of the past sixteen years, GETTY IMAGES not only provided Ms. Motamedi with access to its trade secrets and confidential information, it has compensated her handsomely to use GETTY IMAGES' goodwill and resources to develop relationships with contributors, partners, customers and business prospects, and to develop and lead its employees.  It did so expecting she would act in GETTY IMAGES' best interests at all times.

Ms. Motamedi did not act in GETTY IMAGES' best interests during her employment with GETTY IMAGES.  Prior to Ms. Motamedi's departure from GETTY IMAGES, she used her corporate expense account to purchase and deliver gifts to GETTY IMAGES customers with whom she had developed relationships over the course of her employment.  The gifts were intended to sustain the goodwill Ms. Motamedi had established on GETTY IMAGES' behalf, but were instead, misappropriated to benefit Ms. Motamedi and SilverHub.  In a shocking exchange with Mr. Evans-Lombe on November 26, 2016, Ms. Motamedi acknowledged sending these gifts at GETTY IMAGES' expense (Ex. 1 MOTAMEDI-0092204).  Following delivery of the gifts, Ms. Motamedi received a note from a client thanking her for the gift, which Ms. Motamedi followed with notice of her departure and request to connect through Ms. Motamedi's personal email account (Ex. 1 MOTAMEDI-0088741).  It is clear to me from these exchanges that Ms. Motamedi misappropriated goodwill with GETTY IMAGES' clients, through the purchase of gifts at GETTY IMAGES' expense, to benefit herself and SilverHub, in clear violation of GETTY IMAGES' Code of Conduct and Code of Ethics.

9. <u>Motamedi's Breach of Contract, Fiduciary Duty, Misappropriation, and Unfair Competition</u>.  At the time Ms. Motamedi resigned, she informed us that she planned to take time off to attend to family matters.  Her last day of employment with GETTY IMAGES was November 7, 2016.  However, on or about November 30, 2016, I learned that she was actively poaching employees and photographers of GETTY IMAGES to work for SilverHub and was apparently working for or with SilverHub in some capacity, as an employee, owner, or both.

DECLARATION OF CRAIG PETERS - 5

SEBRIS BUSTO JAMES
14205 S.E. 36th Street, Suite 325
Bellevue, Washington  98006
Tel: (425) 454-4233 – Fax:(425) 453-9005

10. <u>Motamedi solicited GETTY IMAGES' employees to work for SilverHub while employed by GETTY IMAGES</u>.  I have learned that Mr. Evans-Lombe and SilverHub, with the assistance of Motamedi, attempted to lure at least ten key employees of GETTY IMAGES away to work for SilverHub.  As a result of the poaching activities undertaken by Ms. Motamedi over the course of the last several months, at least five of the individuals targeted by Ms. Motamedi and Mr. Evans-Lombe have resigned from GETTY IMAGES and have been subsequently hired by SilverHub.  In some cases, GETTY IMAGES has paid severance to some of these individuals at Ms. Motamedi's encouragement, and we are now learning that they were being courted and had been subsequently hired by SilverHub, thanks to the efforts of Ms. Motamedi.  To facilitate SilverHub's poaching activities, Motamedi shared confidential information regarding employee salaries as well as forwarded specific details on financial terms that would be required to secure particular candidates.  (Ex. 1 MOTAMEDI-0084384, 0084372).  She identified key talent for Mr. Evans-Lombe, noting with respect to one candidate, "He is key to get us where we need to go as far as tech and video."  (Ex. 1 MOTAMEDI-0090472).  She played a critical role in negotiations with individuals, as evidenced by Mr. Evans-Lombe's note, "Thanks for your good advice and talking to her – made the difference." (Ex. 1 MOTAMEDI-0090413).  Ms. Motamedi confirmed to Mr. Evans-Lombe that a key GETTY IMAGES employee accepted SilverHub's offer of employment, as relayed by Ms. Motamedi to that employee, both Ms. Motamedi and that employee would be "working off the record," and requesting confirmation from Mr. Evans-Lombe that their "salary starts as soon as we resign." (Ex. 1 MOTAMEDI-0084701).  Mr. Evans-Lombe responded to Ms. Motamedi with a SilverHub offer letter for that key employee. (Ex. 1 MOTAMEDI-0084703). Ms. Motamedi and Mr. Evans-Lombe exchanged emails as to which key employees and photographers were targeted for meetings, even plotting their strategy during their respective family's medical crises (Ex. 1 MOTAMEDI-0084467, 0084566). All of these referrals, information exchanges and conversations were occurring, as earlier noted, during Ms. Motamedi's tenure as a **paid GETTY IMAGES executive, and even more shockingly, as the direct or indirect supervisor of each of them**.  In what can only be deemed brazen

DECLARATION OF CRAIG PETERS - 6

SEBRIS BUSTO JAMES
14205 S.E. 36th Street, Suite 325
Bellevue, Washington  98006
Tel: (425) 454-4233 – Fax:(425) 453-9005

disregard of the concerns we've raised, Ms. Motamedi, Mr. Evans-Lombe and Mr. Lucas have continued to contact GETTY IMAGES' employees, even after the filing of this action. While Ms. Motamedi has not produced phone logs after December 16, 2016, the date of entry of the Temporary Restraining Order, based on the *more than 50* texts, emails, and calls to, from and among Ms. Motamedi, Mr. Lucas and current and former *employees since the date the Complaint in this action was served* by email to Ms. Motamedi, we have every reason to believe that this activity has and will continue.

11. <u>Motamedi interfered with GETTY IMAGES's business relationships</u>. We now have further evidence that Ms. Motamedi not only diverted business opportunities, interfering with our contractual and business expectancies and conspiring with our competitors, but did so while assuring her direct and indirect supervisors, including me, that she was at all times managing customers, relationships and business dealings for our benefit. In short, she lied repeatedly about her intentions and actions. While we have already uncovered numerous instances and are continuing to do so on a daily basis, the following are a few key examples:

- <u>HR</u>.[1] GETTY IMAGES' relationship with HR provides critical access to Hollywood insider events and venues, which relationship and coverage provides a significant boost to GETTY IMAGES' Entertainment business. Motamedi was the executive in charge of negotiating our relationship with HR, including a multi-year renewal that was signed shortly before Ms. Motamedi's departure. Ms. Motamedi's relationship with HR was cultivated through the partnership that she had been tasked to establish on behalf of GETTY IMAGES. I have learned that concurrent with her negotiation of a renewal agreement on behalf of GETTY IMAGES, Ms. Motamedi was encouraging and assisting Mr. Evans-Lombe to go after a deal with HR. As early as May 2016, there are texts with Mr. Evans-Lombe regarding this customer. Ms. Motamedi writes at one point to Mr. Evans-Lombe, "We have to get this deal. For clients it is huge. It will put you instantly

---

[1] In order to protect GETTY IMAGES' customer relationship, the client is referred to as HR. HR is a key media company controlling access to many venues and events responsible for more than a million dollars in revenue to GETTY IMAGES annually.

DECLARATION OF CRAIG PETERS - 7

SEBRIS BUSTO JAMES
14205 S.E. 36th Street, Suite 325
Bellevue, Washington 98006
Tel: (425) 454-4233 – Fax:(425) 453-9005

on the map." (Ex. 1 MOTAMEDI-0088811).  "I can not [sic] emphasize how aggressive you need to be with HR. It will start your agency and it will be unstoppable.  I can not [sic] tell you how aggressive you need to be... Offer them 1M if you have to for a two years [sic] deal." (Ex. 1 MOTAMEDI-0088761)  This suggestion is appalling as she was AT THE SAME TIME supposed to be negotiating a two year deal on behalf of GETTY IMAGES with this exact customer.

To support SilverHub's negotiations, Motamedi provided contact information to SilverHub, who apparently had no previous relationship with HR (Ex. 1 MOTAMEDI-0091325).  In a galling effort to undermine her own negotiations on behalf of GETTY IMAGES, she also forwarded a confidential summary of all of the business terms in GETTY IMAGES' existing agreement with HR to Mr. Evans-Lombe on October 23, 2016, as she was managing renewal discussions with HR on behalf of GETTY IMAGES (Ex. 1 MOTAMEDI-0090286).

In addition to encouraging Mr. Evans-Lombe to pursue this key customer, she was simultaneously actively working to delay the finalization of GETTY IMAGES' agreement with HR.  "I can not hold up this deal anymore.  I will have to tell our lawyer to start the draft on Thursday." (Ex. 1 MOTAMEDI-0088761).  Ms. Motamedi made efforts to further delay GETTY IMAGES' negotiations with HR, as Ms. Motamedi's note to Mr. Evans-Lombe on October 27, 2016 indicates, "All good now with the reporter – the Getty meeting is pushed with Getty in two weeks."  (Ex. 1 MOTAMEDI-0090417).

The final terms that had been agreed between GETTY IMAGES and HR by Ms. Motamedi included significant concessions on price and term that had to be made to secure the renewal of the ongoing relationship and these concessions were only made to secure the multi-year deal.  Now, with visibility to Ms. Motamedi's interference through

DECLARATION OF CRAIG PETERS - 8

SEBRIS BUSTO JAMES
14205 S.E. 36th Street, Suite 325
Bellevue, Washington  98006
Tel: (425) 454-4233 – Fax:(425) 453-9005

1     SilverHub, I can clearly see the delays and set-backs we encountered in negotiating and
2     closing this deal. And notwithstanding GETTY IMAGES' signing of deal with HR,
3     SilverHub, with the assistance of Motamedi has relentlessly pursued HR in pursuit of a
4     future deal (Ex. 1 MOTAMEDI-0091377). Indeed, this customer has tried to terminate
5     their agreement with GETTY IMAGES and reduce the term, even after it was signed, we
6     believe with the active encouragement of Ms. Motamedi and SilverHub.

8     • <u>Black Flower Agency (BFA)</u>.[2] In January of 2016, in an exchange with her immediate
9     supervisor, Marc Kurschner, Ms. Motamedi noted that she was, "worried about SSTK
10    [Shutterstock] and BFA," both competitors of GETTY IMAGES in the Entertainment
11    space (Ex. 2 - 20161216_025-000550649). She worked hard to convince me and Mr.
12    Kurschner that BFA would never partner with GETTY IMAGES, indicating she had
13    unsuccessfully tested the waters with a cash offer to BFA. (Ex. 2 - 20161216_025-
14    000550649). Given this competitive dynamic with BFA noted by Motamedi herself, I
15    was shocked to learn of the partnership Motamedi was facilitating between SilverHub,
16    BFA and herself in April of 2016, where the three parties looked to be discussing,
17    "a great photo business in the next phase of the industry." (Ex. 1 MOTAMEDI-
18    0083550). Mr. Evans-Lombe also wrote, "I had a chat with Rox today and she suggested
19    that we should see if we can arrange a time for us to get together face-to-face again to
20    explore if there is anything that makes sense for us to pool our resources to build a
21    business that can really shake things up." (Ex. 1 MOTAMEDI-0083618). All of these
22    conversations occurred while Ms. Motamedi was an active, paid employee of GETTY
23    IMAGES, following her efforts to steer GETTY IMAGES away from constructive
24    dialogue with BFA. It is incomprehensible that just after warning us of the competitive
25    threat posed by BFA, Ms. Motamedi was fostering conversations including BFA, to build
26    a competing business against GETTY IMAGES. Ms. Motamedi and Mr. Evans-Lombe

---

[2] GETTY IMAGES' competitor is referred to here as "Black Flower Agency" the same moniker that Ms. Motamedi and Mr. Evans-Lombe used to hide their discussion of the competitor.

DECLARATION OF CRAIG PETERS - 9

continued to communicate with BFA even after the date of notice of this action was provided to them as evidenced by the more than a dozen emails, texts and messages exchanged, including several the day of notice.

- <u>ILB</u>.[3]  In Ms. Motamedi's final days, she diverted a significant company opportunity by delaying her team from closing a lucrative deal in the luxury brand space in Italy with one of our competitors.  (*See* Peters 1st Decl., Ex. 8).  GETTY IMAGES was proposing to begin distributing the competitor's content, to be followed by GETTY IMAGES taking on the invoicing of the competitor's assignments and integration of their photographers in GETTY IMAGES' paid assignment work.  The competitor wanted a quick start to the relationship; however, Ms. Motamedi instructed her team not to sign anything.  Starting in June of 2016, Ms. Motamedi began sharing information about her meetings with this competitor with SilverHub (Ex. 1 MOTAMEDI-0083817).  In September 2016, she noted to Mr. Evans-Lombe that the competitor was, "pushing to be with Getty.  You have very little time.  You need to jump in please." (Ex. 1 MOTAMEDI-0084597) The delay imposed by Ms. Motamedi and interference by SilverHub driven by Ms. Motamedi have undoubtedly led to GETTY IMAGES' loss of a potentially lucrative deal.  It is important to note here that one of the key employees referenced above in paragraph 10 that SilverHub has poached with active participation by Ms. Motamedi was indeed the principal contact at Getty Images for this customer.  The efforts by Ms. Motamedi to undermine this relationship even now are evident in the phone logs produced in this action which evidence ongoing emails, texts and calls with the former Getty sales person, as well as Getty Images' client contact there *since Ms. Motamedi's departure and even after the filing of this action* as noted above in paragraph 10.

- <u>JS</u>.[4]  In the Entertainment world, key photographers can have a significant impact on access to exclusive events, celebrities and customers, who seek out specific photographic talent.  JS is a known talent in Entertainment photography with a long-standing

---

[3] GETTY IMAGES' competitor, and Italian luxury brand space media company, is referred to here as ILB.
[4] To protect the photographer's identity, he is referred to here as JS.

DECLARATION OF CRAIG PETERS - 10

SEBRIS BUSTO JAMES
14205 S.E. 36th Street, Suite 325
Bellevue, Washington 98006
Tel: (425) 454-4233 – Fax:(425) 453-9005

relationship with a well-known music celebrity.  In 2015, when GETTY IMAGES signed JS, we considered it a big win, in large part due to this and his other celebrity relationships.  Ms. Motamedi negotiated JS's deal with GETTY IMAGES in 2015, only to refer him directly to Mr. Evans-Lombe in August 2016, noting, "He [JS] is key to get.  He needs stock option.  [HR] loves him."  (Ex. 1 MOTAMEDI-0084379).  Motamedi set-up meetings between SilverHub and JS while still employed at GETTY IMAGES, requesting Mr. Evans-Lombe to provide an NDA for JS.  (Ex. 1 MOTAMEDI-0090501).  She further recounted to Mr. Evans-Lombe that, "he [JS] is not sure if he will stay at Getty."  In October, Ms. Motamedi authorized a trip for JS to New York at GETTY IMAGES' expense, under the auspices of setting up a meeting between JS and Ms. Motamedi's successors at GETTY IMAGES.  Unbeknownst to us, during this trip paid for by GETTY IMAGES, she facilitated a meeting between JS and SilverHub.  Ms. Motamedi knew the lengths GETTY IMAGES had gone to in order to sign and secure JS as a contributing photographer, and she worked to divert this important relationship away to SilverHub with GETTY IMAGES' bearing the cost of meetings between the parties.  Importantly, these conversations and efforts to interfere in this relationship have continued beyond Ms. Motamedi's termination.  I have reviewed logs of numerous calls, texts and emails, by and between Ms. Motamedi, Ms. Collins (a former Getty Images Employee now working with SilverHub) and Mr. Evans-Lombe and JS that have continued even after the filing of this lawsuit.  No less than 54 emails, texts and calls with or about JS *since Ms. Motamedi left* are referenced in the logs of Ms. Motamedi's devices, including at least a dozen since she had notice of this action.

- DB.[5]  In September 2016, Ms. Motamedi solicited feedback from GETTY IMAGES' management regarding a key photographer and the renewal of his contract with GETTY IMAGES.  That same day, she forwarded information regarding DB's relationship status,

---

[5] DB is used here to protect the photographer's identify.

DECLARATION OF CRAIG PETERS - 11

contract and deal terms to her husband, who then forwarded it to Mr. Evans-Lombe (Ex. 1 MOTAMEDI-0086478, 0086470).

18. <u>Irreparable Harm</u>.  Prior to her resignation, Ms. Motamedi leveraged relationships with GETTY IMAGES' contributors, partners, customers and employees to grow and develop SilverHub in collusion with Mr. Evans-Lombe.  From my very cursory review of the more than 80,000 pages of documents produced in the last 72 hours, I am certain of the harm Ms. Motamedi has caused and, given Ms. Motamedi's predilection for deletion of all of these records, there will be only further evidence of even greater harm evidenced in the ongoing review and discovery of the other related parties  In addition, Ms. Motamedi's records indicate that her actions have continued even after she had notice of this action, as evidenced by the calls, texts and emails among her, Mr. Evans-Lombe, Mr. Lucas and Mr. Pfeifer since this action was initiated, in addition to those with employees, customers and photographers.  I have every reason to believe that they are continuing today. Ms. Motamedi's brazen, deceitful and wrongful conduct as described in this action has and continues to cause irreparable harm to our relationships with customers, photographers, suppliers, and employees.  No amount of money can fully make up for the damage to relationships, which in some cases took many years to develop.  And, no amount of money can fully make up for the sharing of confidential plans and information with our competitors.  Further, unless restrained, she and her co-conspirators will create further damage to our business.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED this <u>9th</u> day of January, 2017, at New York, New York.

_____
Craig Peters

DECLARATION OF CRAIG PETERS - 12

SEBRIS BUSTO JAMES
14205 S.E. 36th Street, Suite 325
Bellevue, Washington 98006
Tel: (425) 454-4233 – Fax:(425) 453-9005