THE HONORABLE RICHARD A. JONES

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

GETTY IMAGES, INC., a Delaware Corporation,

   Plaintiff,

vs.

ROXANNE MOTAMEDI, an individual,

   Defendant.

Case No. 2:16-cv-1892

ORDER

The Court held a hearing on this matter on January 12, 2017.  The Court heard testimony from Defendant Roxanne Motamedi.  Upon review of the briefs and after hearing arguments and testimony from the parties, the Court converts part of the previously issued temporary restraining order (TRO) into a preliminary injunction, as outlined below.  Dkt. # 20.

In order to obtain preliminary relief, a party "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles,* 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)).  "In addition, a 'preliminary injunction is appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of

ORDER - 1

hardships tips sharply in the plaintiff's favor,' provided the plaintiff also demonstrates that irreparable harm is likely and that the injunction is in the public interest." *Andrews v. Countrywide Bank, NA*, 95 F. Supp. 3d 1298, 1300 (W.D. Wash. 2015) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011)).

The Court previously found that these criteria were met, and new facts and argument since verify that this was the correct assessment. First, there is clear evidence submitted to the Court pursuant to the parties' expedited discovery and summarized in Getty's briefs that demonstrate Ms. Motamedi accessed and utilized information solely derived during her employment with Getty. Second, if the Court does not convert the TRO into a preliminary injunction, then Ms. Motamedi may continue to access Getty's confidential information causing harm to Getty that will not be relieved through monetary damages. Third, Ms. Motamedi is able to work in a new position in her industry. Her only restriction is to refrain from utilizing the information described in this Order. Accordingly, the balance of equities tips in Getty's favor. Finally, it is in the public interest for courts to protect confidential information and trade secrets under the circumstances presented in cases such as this one.

The purpose of the January 12, 2017 hearing, in part, was to allow Ms. Motamedi the opportunity to present evidence in support of her defenses and to argue that the balance of equities tipped in her favor. Indeed, Ms. Motamedi argued that the balance of hardships tipped in her favor because she is effectively barred from pursuing work in her field. This is not the case. Washington law supports the idea that client lists—whether in tangible form or memorized—are protected trade secrets. The Washington Supreme Court specifically found that

> As a general rule, an employee who has not signed an agreement not to compete is free, upon leaving employment, to engage in competitive employment. In so doing, the former employee may freely use general knowledge, skills, and experience acquired under his or her former employer.

ORDER - 2

> However, the former employee, even in the absence of an enforceable covenant not to compete, remains under a duty not to use or disclose, to the detriment of the former employer, trade secrets acquired in the course of previous employment. Where the former employee seeks to use the trade secrets of the former employer in order to obtain a competitive advantage, then competitive activity can be enjoined or result in an award of damages

*Ed Nowogroski Ins., Inc. v. Rucker*, 971 P.2d 936, 941–42 (Wash. 1999). Therefore, Ms. Motamedi is enjoined from utilizing Getty's client lists in any way, including through the use of her own memory. Though it should be clear, the Court reiterates that Ms. Motamedi may not divulge this information to Silverhub.

Washington courts recognize the Restatement (Second) of Agency. *See Kieburtz & Assocs., Inc. v. Rehn*, 842 P.2d 985, 988 (Wash. Ct. App. 1992) (noting that Washington "courts have referenced the Restatement (Second) of Agency in many prior cases, and it cannot be argued that the Restatement is irrelevant to decisions made in this jurisdiction."). According to the Restatement (Second) of Agency, employees may prepare to compete prior to resignation, but they may not actively solicit customers or use confidential information before resignation. Restatement (Second) of Agency § 393 (1958). Therefore, to preserve the status quo, Ms. Motamedi is enjoined from contacting any of Getty's employees or freelancers that she had contacted prior to her resignation with regard to joining Silverhub. This prohibition will remain in effect until November 7, 2017, which is twelve months from the date of Ms. Motamedi's resignation.

Ms. Motamedi argued that allowing Getty to completely "wipe" her devices was a draconian measure. The Court agrees in part. The Court places the onus on Ms. Motamedi to identify the information on her phones and computers that is personal to her and unrelated to the current dispute. The Court orders Ms. Motamedi to identify this

ORDER - 3

information on any phone or computer she used in the course of her employment with Getty.  Ms. Motamedi shall then turn over all of these devices along with the list of the identified personal information to an agreed upon neutral third party who will delete any information that Ms. Motamedi has not identified as personal.  The parties shall direct the neutral third party to image the devices after this process so that Ms. Motamedi may confirm with Getty that its confidential information and trade secrets have been removed from her devices.  The Court requires the parties to file a joint status report within one week from the date of this Order confirming that this process has been completed.

The Local Rules authorize the Court to "order the parties to engage in mediation . . ., and may schedule the required steps so as to maximize the prospects of early settlement."  W.D. Wash. Local Rules LCR 39.1(c).  Though the Court will not order the parties into mediation at this time, it strongly encourages the parties to consider such a path for this litigation.

Dated this 19th day of January, 2017.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

ORDER - 4