The Honorable Richard A. Jones

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| GETTY IMAGES, INC., a Delaware Corporation, | Case No. 2:16-cv-1892 |
| vs. | |
| ROXANNE MOTAMEDI, an individual, | DECLARATION OF TINA M. AIKEN IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| Defendant. | |

I, Tina M. Aiken, declare as follows:

1.      I am one of the attorneys representing Plaintiff Getty Images, Inc. ("Getty Images") in this action.  I have personal knowledge of the facts set forth in this declaration.

2.      I have spent hundreds of hours reviewing the documents produced by Ms. Motamedi in this matter, as well as the documents obtained from Getty Images' capture of Ms. Motamedi's emails from its server.  The documents number in the hundreds of thousands. There is no way to effectively present all of the relevant documents to the Court.

3.      In addition, many of the documents are marked "Highly Confidential" or even "Attorney Eyes Only."  Getty Images has filed a motion to seal with its motion for summary judgment.  Unless and until that motion is ruled on, many relevant documents supporting Getty Images' motion for summary judgment cannot be filed.

DECLARATION OF TINA M. AIKEN IN
SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 1
Case No.

4.      To facilitate the Court's review of Getty Images' motion, I have created the following summary of events, based on the documents I have reviewed, and declarations on file with the Court.  The summary is true and correct, to the best of my knowledge and belief.

Trade Secrets

5.      Beginning in January 2015, if not earlier, Motamedi forwarded Getty Images' trade secret and confidential information to her husband's email account.  Attached as **Exhibit 1** is a table that includes numerous trade secret documents forwarded by Motamedi to her husband's account, her personal email account and Nick Evans-Lombe.  Attached as **Exhibit 2** is a table that includes numerous confidential documents forwarded by Motamedi to her husband's account, her personal email account and Nick Evans-Lombe.  By December 2015, Motamedi was sharing and forwarding confidential information to Nick Evans-Lombe regarding Getty Images. *Id.*; *see also* Peters 1st Decl., ¶ 14, Ex. 3-5. In June 2016, after Motamedi activated her swissrox account, her misappropriation activity increased significantly. *See* **Exhibits 1, 2**. She also began forwarding Getty Images' trade secrets to Evans-Lombe in June 2016, if not earlier. *Id.*  From June 2016 through November 7, 2016, her last day of employment with Getty Images, Motamedi forwarded at least 77 documents containing Getty Images' trade secrets to her personal and husband's emails accounts, and at least 59 documents with confidential information regarding Getty Images' business. *Id*. During this period, Motamedi forwarded at least 14 documents containing Getty Images' trade secrets to Evans-Lombe's email account, and at least 51 documents with confidential information regarding Getty Images' business.  *Id*.

6.      Getty Images claims that Ms. Motamedi misappropriated the company's trade secrets and confidential information. The documents at issue fall into seven categories: (a) business strategies, (b) financial information, (c) pricing information, (d) agreements with clients and contributors, (e) client lists, (f) contributor lists, and (g) technology development. The following are a few examples of trade secrets Getty Images claims were misappropriated by Ms. Motamedi.

7.      Business strategy: On June 9, 2016, Craig Peters, Getty Images' Chief Executive Officer, emailed a highly detailed and confidential summary to Getty Images' senior business leaders that highlighted progress and challenges in Getty Images' strategic initiatives, content

DECLARATION OF TINA M. AIKEN IN
SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 2
Case No.

SEBRIS BUSTO JAMES
14205 S.E. 36th Street – Suite 325
Bellevue, Washington  98006
(425) 454-4233

1   partnerships, marketing initiatives, clients and corporate transactions, as well as very detailed

2   information regarding Getty Images' financial position. Attached hereto as **Exhibit 3** is a

3   redacted copy of Peters' summary, State of the Business (6/10/16) (GI_1002793) [1]; *see also* Dkt.

4   34 ("Peters 2nd Decl."), ¶ 7, Ex. 1.  Given the highly sensitive nature of the information detailed

5   in the summary, Peters included an express "reminder of the confidential treatment of this

6   information" at the beginning of the email. *Id.* Ms. Motamedi forwarded the highly confidential

7   communication to her swissrox account (20161216_025-000484118) and to her husband

8   (20161216_025-000484119), as well as Nick Evans-Lombe with the message, "Probably very

9   naughty to send you this but please do not forward." *See* Peters 2nd Decl., ¶ 7, Ex. 1

10  (MOTAMEDI-0083767). Attached hereto as **Exhibit 4** are redacted copies of Motamedi's

11  emails.  Peters' email was a clear road map and articulation of Getty Images' current positioning

12  in the imagery market and would be invaluable to a competitor or potential competitor of Getty

13  Images.  *See* Peters 2nd Decl., ¶ 7.

14       8.      On June 21, 2016, Motamedi forwarded information regarding Getty Images'

15  strategic partnership with GCV[2] to her swissrox account. Attached hereto as **Exhibit 5** is a

16  redacted copy of Motamedi's email (#58 - GI_1002761).[3] She then forwarded the document,

17  which clearly stated "Confidential: for internal purposes only," to Evans-Lombe with the

18  message, "[REDACTED]." (MOTAMEDI-0083874). (Defendant designated this document as

19  Confidential pursuant to the Stipulated Protective Order.  A true and correct (unredacted) copy

20  will be filed if/when Getty Images' motion to seal is granted.)  Evans-Lombe forwarded it to

21  Adrian Murrell, who then forwarded to Ben Pfeifer at Shutterstock, who then forwarded it to

22  Shutterstock's management team. (SSTK0007). (Defendant designated this document as

23  Confidential pursuant to the Stipulated Protective Order. A true and correct (unredacted) copy

24  will be filed if/when Getty Images' motion to seal is granted.)  The document contained

---

[1] A true and correct (unredacted) copy will be filed if/when Getty Images' motion to seal is granted.
[2] In order to protect Getty Images' partner relationship, the partner here is referred to as GCV.
[3] A true and correct (unredacted) copy will be filed if/when Getty Images' motion to seal is granted.

DECLARATION OF TINA M. AIKEN IN
SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 3
Case No.

SEBRIS BUSTO JAMES
14205 S.E. 36th Street – Suite 325
Bellevue, Washington  98006
(425) 454-4233

1    confidential information regarding Getty Images' reasons and goals for the investment in GCV,

2    and key messaging to be used when communicating about the deal. *See* Peters 3rd Decl., ¶ 4.

3        9.      On September 25, 2016, Peters emailed a detailed summary of proceedings from a

4    Getty Images' content summit to the content team that articulated the key competitive dynamics,

5    strategies and challenges in sourcing content, which is the lifeblood of Getty Images' business.

6    Attached hereto as **Exhibit 6** is a redacted copy of Peters' email[4] (MOTAMEDI-0214091); *see*

7    *also* Peters 2nd Decl., ¶ 7. The email included an attached power point presentation regarding the

8    business update and revenue, which was clearly marked on every page, "GETTY IMAGES-

9    CONFIDENTIAL AND PROPRIETARY." Attached hereto as **Exhibit 7** is a redacted copy of

10   Peters' power point.[5] (MOTAMEDI- 0214095). This information would be invaluable to any

11   competitor targeting key providers of content to Getty Images as well as helping a competitor

12   undermine Getty Images' progress in sourcing content. *See* Peters 2nd Decl., ¶ 7. Motamedi

13   forwarded the contents of the email and attachment to her husband (MOTAMEDI-0214091 and

14   0214095) and her swissrox account (MOTAMEDI-0214087), and then to Evans-Lombe with the

15   note, "[REDACTED]." (MOTAMEDI-0084880) (Defendant designated this document as

16   Confidential pursuant to the Stipulated Protective Order. A true and correct (unredacted) copy

17   will be filed if/when Getty Images' motion to seal is granted.)

18       10.     <u>Financial information</u>. On July 8, 2016, Marc Kurschner (Senior Vice President,

19   Sales) shared Getty Images' June 2016 Revenue Results with his team, which included

20   Motamedi, with the instruction, "please do not share this broadly". Attached hereto as **Exhibit 8**

21   is a redacted copy of Kurschner's email (20161216_025-000183730).[6] Motamedi forwarded the

22   revenue results to her swissrox account (#45 - GI_1002769), hereto as **Exhibit 9**, and then

23   forwarded the document to Evans-Lombe. (MOTAMEDI-0083982) (Defendant designated this

24   document as Confidential pursuant to the Stipulated Protective Order. A true and correct

25

26

27

28

---

[4] A true and correct (unredacted) copy will be filed if/when Getty Images' motion to seal is granted.
[5] A true and correct (unredacted) copy will be filed if/when Getty Images' motion to seal is granted.
[6] A true and correct (unredacted) copy will be filed if/when Getty Images' motion to seal is granted.

DECLARATION OF TINA M. AIKEN IN
SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 4
Case No.

**SEBRIS BUSTO JAMES**
14205 S.E. 36th Street – Suite 325
Bellevue, Washington  98006
(425) 454-4233

1    (unredacted) copy will be filed if/when Getty Images' motion to seal is granted.)   The document

2    contains an evaluation of Getty Images' revenue figures broken down by division and location.

3         11.   On July 29, 2016, Motamedi's direct report, Christine Pettinger (Director, Content

4    Operations) sent her revenue information, employee performance data and client opportunities

5    for the Italy market. Attached hereto as **Exhibit 10** is a redacted copy of Pettinger's email (#46 –

6    GI_1002532).[7] Motamedi forwarded the confidential data to her swissrox account (*Id.*), and then

7    to Evans-Lombe. (MOTAMEDI-0084085) (Defendant designated this document as Confidential

8    pursuant to the Stipulated Protective Order. A true and correct (unredacted) copy will be filed

9    if/when Getty Images' motion to seal is granted.)  The email and attachment contained revenue

10   data for the Italy market, including the target for Q3, actual billed, pipeline and opportunities, as

11   well as names of potential clients and events. Francesca Chiapponi, one of the three Getty

12   Images' Italy employees whose performance evaluation was included in the email, was hired by

13   SilverHub a few months later.

14        In the hands of a competitor, Getty Images' sensitive financial information would allow

15   an unfair competitive edge. *See* Peters 3rd Decl., ¶¶ 5,6.

16        12.   <u>Pricing</u>. On October 14, 2016, Motamedi requested Getty Images Sales Manager,

17   Rosa Di Salvo, to send her sales data for HR,[8] which she then forwarded to her swissrox account

18   (#48 - GI_1004384), hereto as **Exhibit 11**, and then to Evans-Lombe. (MOTAMEDI-0088705)

19   (Defendant designated this document as Confidential pursuant to the Stipulated Protective Order.

20   A true and correct (unredacted) copy will be filed if/when Getty Images' motion to seal is

21   granted.)  Motamedi followed up with emails and calls to Di Salvo for more information because

22   she and Evans-Lombe were strategizing about whether to charge HR for a subscription. Attached

23   hereto as **Exhibit 12** are redacted copies of Motamedi's emails (20161216_025-000538285,

24   20161216_025-000567884, 20161216_025-000538986).[9] Download volume and pricing data for

25

26   [7] A true and correct (unredacted) copy will be filed if/when Getty Images' motion to seal is granted.

27   [8] In order to protect Getty Images' partner relationship, the partner here is referred to as HR.
     [9] True and correct (unredacted) copies will be filed if/when Getty Images' motion to seal is granted.

28   DECLARATION OF TINA M. AIKEN IN
     SUPPORT OF PLAINTIFF'S MOTION FOR
     SUMMARY JUDGMENT - 5
     Case No.

SEBRIS BUSTO JAMES
14205 S.E. 36th Street – Suite 325
Bellevue, Washington  98006
(425) 454-4233

1    one of Getty Images' highest revenue clients is highly confidential and would provide a

2    competitor with an unfair advantage that would significantly affect Getty Images' bargaining

3    power. *See* Peters 3rd Decl., ¶ 6.

4         13.    <u>Agreements</u>. Getty Images' relationships with third parties, including

5    contributors, partners and clients, are key to Getty Images' success. Its relationships with

6    contributors, including some of the most well-known celebrity photographers, are key to driving

7    the content that feeds revenue. *See* Peters 3rd Decl., ¶ 7. Without the relationships with

8    contributors, who often have the relationships with talent, agents and promoters, Getty Images'

9    revenue would plummet. *Id.* For example, Getty Images acquired Wire Image in 2009. At the

10   time, Wire Image and its affiliate FilmMagic were regarded as the premier photo agency

11   covering the entertainment industry. *Id.* Today, the founders of that agency are still exclusive to

12   Getty Images. *Id.* However, in the last few weeks of her employment with Getty Images,

13   Motamedi forwarded all WireImage and FilmMagic agreements to her personal email account.

14   *Id.* Those agreements were highly negotiated, and among the most lucrative of all Getty Images'

15   arrangements with photographers. *Id.* The sharing of that information could harm not only the

16   relationships with those photographers, but with all of Getty Images' photographers. *Id.* Given

17   that she forwarded the agreements to her personal email account at a time when she knew she

18   would be leaving Getty Images, she could only have done so for an illegitimate purpose. *Id.*

19   Attached hereto as **Exhibit 13** are redacted copies of Founders' agreements (##6-10, 22).[10]

20        14.    Additional agreements constituting trade secrets contain pricing terms, royalty

21   rates and expiration dates. *See* Peters 3rd Decl., ¶ 8. Attached hereto as **Exhibit 14** are redacted

22   copies of some of the agreements constituting trade secrets that Motamedi misappropriated,

23   along with evidence of her misappropriation (#15-21, 28).[11] The parties to the contracts agree to

24   keep the terms of the agreements confidential, and Getty Images limits access to the agreements

25   to employees with a need to know. *Id.* If a competitor obtained such information regarding the

26

27   _____

     [10]True and correct (unredacted) copies will be filed if/when Getty Images' motion to seal is granted.

28   [11] True and correct (unredacted) copies will be filed if/when Getty Images' motion to seal is granted.

DECLARATION OF TINA M. AIKEN IN
SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 6
Case No.

**SEBRIS BUSTO JAMES**
14205 S.E. 36th Street – Suite 325
Bellevue, Washington  98006
(425) 454-4233

1   terms negotiated between Getty Images and its clients and contributors, the competitor would be

2   able to undermine the company's bargaining power by offering more favorable terms and rates.

3   *Id.* The longterm impact on Getty Images' business could be devastating. *Id.*

4       15.   <u>Client lists</u>. On July 27, 2016, Motamedi directed Jean-Maurice Esparbes, a

5   Senior Account Manager from Getty Images' Paris office, to forward to her the gift list for

6   clients managed by Getty Images' French team. Attached hereto as **Exhibit 15** is a redacted copy

7   of Motamedi's email (#37 - email GI_1002541-43; attach GI_1002544-2646).[12] On that same

8   date, Motamedi forwarded the report to her husband's email account, with the instruction, "save

9   this." Attached hereto as **Exhibit 16** is a redacted copy of Motamedi's email (MOTAMEDI-

10  0208738).[13] Converted to pdf, the report is 103 pages and contains the following confidential

11  information regarding Getty Images' French clients: company names, contact names and emails,

12  sales revenue, and gifts given and proposed.

13      16.   On September 30, 2016, Motamedi directed Esparbes to send her paid assignment

14  revenue per quarter for 2016. Attached hereto as **Exhibit 17** is a redacted copy of Motamedi's

15  email (#38 - email GI_10000038-39; attach GI_1000040-2090).[14] Shortly after receiving the

16  excel report from Esparbes, Motamedi forwarded it to her swissrox account, and then to Evans-

17  Lombe. (email MOTAMEDI-0086480 and attach MOTAMEDI-0086482) (Defendant designated

18  this document as Confidential pursuant to the Stipulated Protective Order. A true and correct

19  (unredacted) copy will be filed if/when Getty Images' motion to seal is granted.)  Converted to

20  pdf, the report is 2050 pages and contains the following confidential information regarding

21  clients managed by Getty Images' French team: company names; contact names, emails and

22  addresses; job numbers; identification numbers; portfolio and collection level details; order detail

23  notes; image descriptions; sales revenue; pricing; discount percentages; product types;

24  contributors; media and product types; and other confidential information.

---

[12] A true and correct (unredacted) copy will be filed if/when Getty Images' motion to seal is granted.
[13] A true and correct (unredacted) copy will be filed if/when Getty Images' motion to seal is granted.
[14] A true and correct (unredacted) copy will be filed if/when Getty Images' motion to seal is granted.

DECLARATION OF TINA M. AIKEN IN
SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 7
Case No.

SEBRIS BUSTO JAMES
14205 S.E. 36th Street – Suite 325
Bellevue, Washington  98006
(425) 454-4233

1   Both client lists, in the hands of a competitor, provide the competitor an unfair advantage

2   over Getty Images. *See* Peters 3rd Decl., ¶ 9. The competitor can plainly determine the most

3   lucrative clients to target, including who to contact, and know what pricing to negotiate to

4   undercut Getty Images' client relationships. *Id.*

5   17.   Contributor lists. On September 28, 2016, Motamedi directed her subordinate,

6   Cory Lidschin, to have Getty Images' employees prepare a report for her that included Global

7   Entertainment Contributor Sales from January through August 2016. Attached hereto as **Exhibit**

8   **18** is a redacted copy of Motamedi's email (20161216_025-000252293).[15] Shortly after

9   receiving the report from Lidschin, Motamedi forwarded it to her swissrox account (email

10   GI_1002092; attach GI_1002093-2439), hereto as **Exhibit 19**, and then to Evans-Lombe with the

11   instruction, "Important have a look". (MOTAMEDI-02144320). Attached hereto as **Exhibit**

12   **20**.[16] Evans-Lombe replied, "Big numbers… Are these all gross? What is the typical % share for

13   the guys outside the top 10 ie. Not Mazur, Granitz etc?" Motamedi replied, "Most are at 50/50. I

14   am getting their percentage today. That is why a lot are reluctant to leave." Attached hereto as

15   **Exhibit 21** is a redacted copy of the email exchange (MOTAMEDI-0214460).[17] Converted to

16   pdf, the report is 347 pages and contains the following confidential information regarding Getty

17   Images' contributors: contributor name, contract title, contract ID and sum of sales. Such

18   information in the hands of a competitor provides the competitor an unfair advantage, as the

19   competitor can plainly determine the highest value contributors to target. *See* Peters 3rd Decl., ¶

20   10.

21   18.   While Motamedi and Evans-Lombe were discussing Getty Images' trade sensitive

22   information, Motamedi's direct reports were scrambling to gather the information she had

23   promised to Evans-Lombe (Lidschin request to Brent Bennett, "Sorry to ask you for something

24   else for this report, but Roxanne needs what royalty each photographer gets. Is this possible for

---

[15] A true and correct (unredacted) copy will be filed if/when Getty Images' motion to seal is granted.

[16] True and correct (unredacted) copies will be filed if/when Getty Images' motion to seal is granted.

[17] A true and correct (unredacted) copy will be filed if/when Getty Images' motion to seal is granted.

DECLARATION OF TINA M. AIKEN IN
SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 8
Case No.

**SEBRIS BUSTO JAMES**
14205 S.E. 36th Street – Suite 325
Bellevue, Washington 98006
(425) 454-4233

you to add this? She just asked me for this." And then Lidschin request to Christine Pettinger, "Brent is pulling other data for Roxanne so I can't ask him for everything… Can you and your team send me royalty rates …?"). Attached hereto as **Exhibit 22** are redacted copies of the emails (20161216_025-000275078).[18]

19.   Technology. Getty Images' competitive advantage in the marketplace is predicated upon the speed to market with which it delivers content to their clients. *See* Peters 3rd Decl., ¶ 11. Getty Images gets exclusive access to events because the promoters of the events trust the company to deliver the highest quality images in the fastest time. *Id*. Clients commit to significant revenue because they know they can get the most eyes on the content. *Id*. In 2015-2016, Getty Images wanted to streamline that speed to market even further and undertook the development of RAPT,[19] a proprietary program that drives editorial workflow, to do so. *Id*.

20.   Motamedi forwarded updates regarding the development of RAPT to her swissrox account in June, July, August and October 2016. Attached hereto as **Exhibit 23** are redacted copies of the emails (MOTAMEDI-0074122, MOTAMEDI-0074265, MOTAMEDI-0074474, MOTAMEDI-0074754, MOTAMEDI-0078412 and MOTAMEDI-0078695).[20] On September 15, 2016, Motamedi forwarded an update regarding a RAPT field test to Evans-Lombe. Attached hereto as **Exhibit 24** is a redacted copy of Motamedi's email (20161216_025-000407637).[21] Information regarding RAPT is not publicly available, and Getty Images would suffer economic harm if the technology was available to its competitors. *See* Peters 3rd Decl., ¶ 11. If a competitor was able to replicate Getty Images' technology, it would not need to spend the significant amount of time and energy that Getty Images invested in developing the technology, and the unfair advantage would allow the competitor to compete more effectively with Getty Images. *Id*. Getty Images' COO estimates that damages to Getty Images would exceed $1MM if this technology was made available to the public. *Id*.

---

[18] True and correct (unredacted) copies will be filed if/when Getty Images' motion to seal is granted.
[19] In order to protect Getty Images' proprietary technology, it is referred to as RAPT.
[20] True and correct (unredacted) copies will be filed if/when Getty Images' motion to seal is granted.
[21] A true and correct (unredacted) copy will be filed if/when Getty Images' motion to seal is granted.

DECLARATION OF TINA M. AIKEN IN
SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 9
Case No.

**Sebris Busto James**
14205 S.E. 36th Street – Suite 325
Bellevue, Washington  98006
(425) 454-4233

21.     Getty Images seeks summary judgment on the issue of liability, leaving for trial the amount of damages to be awarded for Motamedi's transgressions. That is because an exact calculation of Getty Images' damages cannot be made without an accounting or a trial. There are categories of damages, however, can be stated with relative certainty: unjust enrichment from misappropriating trade secrets (doubled due to willfulness), salary payments while in breach of duty of loyalty (or alternatively, as additional damages for unjust enrichment); payments received from her co-conspirator for Getty Images' trade secrets and confidential information; costs Getty Images was forced to incur to retain employees, contributors, photographers, and clients, and the cost of the gifts Motamedi sent out knowing she was leaving to join SilverHub.

22.     With respect to damages for unjust enrichment, Getty Images COO testified that the value of the trade secrets Motamedi misappropriated was somewhere between $10 million and $100 million. *See* Peters 3rd Decl., ¶ 14.  The misappropriation of Getty Images' trade secrets was willful and malicious. Consequently, Getty Images will seek an award from the Court of exemplary damages equal to the amount of damages awarded by the jury per RCW 19.108.030(2).

22.     With respect to damages for Motamedi's breach of her duty of loyalty and unjust enrichment unrelated to the trade secret claims, Motamedi was paid approximately $300,000 between January 1, 2016 and November 7, 2016.  She also received benefits during this time. Getty Images will ask the jury to award the total amount of gross compensation and benefits received from Getty Images between January 1, 2016 and her last day of employment, November 7, 2016 for these claims.

23.     Motamedi has identified approximately $100,000 in payments she received from SilverHub. Getty Images will ask the jury to award the total gross amount of payments received from SilverHub as part of its unjust enrichment damages.

23.     After discovering the conspiracy between Motamedi and Evans-Lombe, and the tortious interference with Getty Images' employment relationships, Getty Images was forced to take steps to secure the continued loyalty of the entertainment teams in LA, New York and Europe, by making a number of enhancements to the salary, commission and bonus entitlements

DECLARATION OF TINA M. AIKEN IN
SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 10
Case No.

SEBRIS BUSTO JAMES
14205 S.E. 36th Street – Suite 325
Bellevue, Washington  98006
(425) 454-4233

of its employees, and its contributors, outside of and in addition to the usual compensation adjustments it would have made.  The total cost of these compensation adjustments exceeds $100,000.  For the same reasons, Getty Images had to offer enhanced payments to two key photographers to keep them from falling prey to Motamedi's wrongful solicitation.  The payments made to retain these photographers are approximately $200,000.  Getty will ask the jury to award these sums as damages.

25.     Motamedi ultimately failed in her scheme with Evans-Lombe to steal a key Getty Images' client, THR, but only because Getty Images agreed to pay the higher price and provide more generous terms, at a cost to it of approximately $100,000 in reduced license fees. In addition, Getty Images had to agree to give THR "free" access to content that it would otherwise have had to pay for. Getty Images will ask the jury to award damages for these losses.

26.     Motamedi sent out gifts to Getty Images clients early, knowing she was leaving to join SilverHub. She provided her private contact information so that those clients could "pay her back" by following her to SilverHub. The cost of those gifts was in the tens of thousands of dollars. Getty Images will ask the jury to award damages for these expenses.

28.     Getty Images seeks an award for its attorney fees and costs, per RCW 19.108.040 and the attorney fee provisions in the NDAs.  Getty Images' fees and costs incurred to date exceed $1MM. Getty Images will submit a separate fee petition, along with supporting documentation if the Court awards it fees and costs.

29.     Attached hereto as **Exhibit 25** is a list of redacted exhibits under seal which have been designated by Defendant as Confidential pursuant to the Stipulated Protective Order and will be produced pending the approval of the motion to seal.

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

DATED this 31st day of October, 2017, at Bellevue, Washington.

SEBRIS BUSTO JAMES

/s/ Tina M. Aiken
Tina M. Aiken, WSBA #27792

DECLARATION OF TINA M. AIKEN IN
SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 11
Case No.

Email:  taiken@sebrisbusto.com
14205 S.E. 36th Street, Suite 325
Bellevue, Washington  98006
Tel: 425-454-4233 / Fax:  425-453-9005
Attorneys for Plaintiff

DECLARATION OF TINA M. AIKEN IN
SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 12
Case No.

1

## CERTIFICATE OF SERVICE

2

3
I certify that a copy of the foregoing document was filed electronically with the court and thus served simultaneously upon all counsel of record, this 31st day of October, 2017.

4
/s/ *Holly Holman*

5
Holly Holman

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
DECLARATION OF TINA M. AIKEN IN
SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 13
Case No.

SEBRIS BUSTO JAMES
14205 S.E. 36th Street – Suite 325
Bellevue, Washington  98006
(425) 454-4233