The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| GETTY IMAGES, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ROXANNE MOTAMEDI, an individual,<br><br>Defendant. | Case No. 2:16-cv-1892<br><br>THIRD DECLARATION OF CRAIG PETERS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

1. <u>Introduction</u>. I am over 18 years of age, am competent to testify, and have personal knowledge of the facts set forth herein.

2. <u>Background</u>. I remain in the same role as described in my first and second Declarations filed in this action.

3. Getty Images is one of the world's leading creators and distributors of still imagery, video and multimedia products, and other forms of premium digital content, supplying such content to creative professionals in advertising and graphic design, the media and corporate clients. Getty Images has an Editorial business, that includes global News, Sport, Entertainment and Archival divisions. The global Entertainment division specializes in the photographic coverage of celebrity events worldwide, including awards ceremonies, music concerts, film premieres, red carpet events, fashion shows, celebrity parties and similar occasions, and generates revenues of over $80MM annually. Central to the success of Getty Images' Entertainment division is the

DECLARATION OF CRAIG PETERS - 1

stability of its workforce; the trustworthiness and integrity of the persons employed in its workforce; the development and maintenance of relationships with key photographers, to supply and provide up to date and contemporary photographic images and videos; relationships with its clients; and the protection of its confidential and trade secret information from dissemination to and use by its competitors.

4. In June 2016, Getty Images announced an investment in GCV.[1] An internal document was sent to employees explaining Getty Images' reasons and goals for the investment in GCV, and key messaging to be used when communicating about the deal. The internal communication clearly stated "Confidential: for internal purposes only" on the face of the document. Financing and capital details of the company are private and could provide a competitor with an understanding of our capabilities and/or plans, which they could use to our disadvantage. We also have publicly traded bonds and so, while not a public company, we are subject to SEC Regulation FD, which prohibits any disclosure of Material Non-Public Information.

5. Access to Getty Images' revenue data and other financial information is strictly limited to a need-to-know, and rarely falls below a Director level, especially when involving numbers outside of one's own purview. Getty Images' revenue projections and results are trade sensitive and would provide an unfair advantage in the hands of a competitor.

6. Access to information related to download volume and pricing data for a client is limited to the finance, audit and legal teams that draft, negotiate and report on these matters, as well as the direct sales employees who support those customers and their management line. The information is highly confidential and would provide a competitor with an unfair advantage that would significantly affect Getty Images' bargaining power with the client.

7. Getty Images' relationships with third parties, including contributors, partners and clients, are key to Getty Images' success. Its relationships with contributors, including some of the most well-known celebrity photographers, are key to driving the content that feeds revenue. Without the relationships with contributors, who often have the relationships with talent, agents

---

[1] In order to protect Getty Images' partner relationship, the partner here is referred to as GCV.

DECLARATION OF CRAIG PETERS - 2

SEBRIS BUSTO JAMES
14205 S.E. 36th Street, Suite 325
Bellevue, Washington  98006
Tel: (425) 454-4233 – Fax:(425) 453-9005

and promoters, Getty Images' revenue would plummet. For example, Getty Images acquired Wire Image in 2009. At the time, Wire Image and its affiliate FilmMagic were regarded as the premier photo agency covering the entertainment industry. Today, the founders of that agency are still exclusive to Getty Images. However, in the last few weeks of her employment with Getty Images, Motamedi forwarded all WireImage and FilmMagic agreements to her personal email account. Those agreements were highly negotiated, and among the most lucrative of all Getty Images' arrangements with photographers. The sharing of that information could harm not only the relationships with those photographers, but with all of Getty Images' photographers. Given that she forwarded the agreements to her personal email account at a time when she knew she would be leaving Getty Images, she could only have done so for an illegitimate purpose.

8. Additional agreements constituting trade secrets contain pricing terms, royalty rates and expiration dates. The parties to the contracts agree to keep the terms of the agreements confidential, and Getty Images limits access to the agreements to employees with a need to know. If a competitor obtained such information regarding the terms negotiated between Getty Images and its clients and contributors, the competitor would be able to undermine the company's bargaining power by offering more favorable terms and rates. The long-term impact on Getty Images' business could be devastating.

9. Client lists, in the hands of a competitor, provide the competitor an unfair advantage over Getty Images. Information such as company names, contact names and emails, sales revenue, job numbers, identification numbers, portfolio and collection level details, order detail notes, image descriptions, pricing, discount percentages, product types, contributors, media and product types, and other confidential information is highly confidential and access to such data is limited to a group of persons who have a need-to-know, and who are all bound by nondisclosure agreements, Getty Images' Code of Business Conduct and its Code of Ethics, as well as their fiduciary obligations. If forwarded to a competitor, the competitor can plainly determine the most lucrative clients to target, including who to contact, and know what pricing to negotiate to undercut Getty Images' client relationships.

DECLARATION OF CRAIG PETERS - 3

10. Contributor lists, in the hands of a competitor, provide the competitor an unfair advantage over Getty Images. Information such as contributor names, contract titles, contract IDs, royalty rates and sales would give a competitor an unfair advantage, as the competitor can plainly determine the highest value contributors to target.

11. Getty Images' competitive advantage in the marketplace is predicated upon the speed to market with which it delivers content to their clients. Getty Images gets exclusive access to events because the promoters of the events trust the company to deliver the highest quality images in the fastest time. Clients commit to significant revenue because they know they can get the most eyes on the content if they have the first available content from events. To further enhance its ability to provide this speed to market, in 2015-2016, Getty Images undertook the development of RAPT,[2] a program that, when integrated with our Enterprise Submission Platform, drives a combined proprietary editorial workflow that delivers content to customers and our website faster than any competitor's systems today.

Information regarding the RAPT integration is not publicly available, and Getty Images would suffer economic harm if the knowledge of our technology or workflow was available to its competitors. If a competitor was able to replicate Getty Images' technology or workflow, it would not need to spend the significant amount of time and energy that Getty Images invested in developing the technology, and the unfair advantage would allow the competitor to compete more effectively with Getty Images. I estimate that damages to Getty Images would exceed $1MM if this technology was made available to the public.

12. Getty Images distributes and licenses content for hundreds of partners who rely on the power of its platform to distribute their content. Those relationships have a direct impact on revenue. To put negotiations on hold, or pause the cadence of the relationship has a direct and negative impact on that relationship, and by extension other relationships and ultimately revenue.

---

[2] In order to protect Getty Images' proprietary technology, it is referred to as RAPT.

DECLARATION OF CRAIG PETERS - 4

13. Getty Images invested time and money into having attorneys craft the company's mutual NDA form. Ms. Motamedi's disclosure and use of it for her own benefit was a violation of her Non-Disclosure Agreement.

14. The harm to Getty Images caused by Ms. Motamedi's wrongful use and disclosure of Getty Images' misappropriated trade secrets is significant and long term. We will not know the full extent of the harm for years, as our competitors (SilverHub and Shutterstock, as well as Ms. Motamedi) make use of that information to harm us in the marketplace. Based on my years of experience in the industry, the volume of data purloined, and the highly sensitive nature of the data, I would put Getty Images' damages somewhere between $10 million and $100 million.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED this 31st day of October, 2017, at New York, New York.

Craig Peters

DECLARATION OF CRAIG PETERS - 5

SEBRIS BUSTO JAMES
14205 S.E. 36th Street, Suite 325
Bellevue, Washington 98006
Tel: (425) 454-4233 – Fax:(425) 453-9005